## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALFRETTA ANTOINE, SHANNON CAVE, CHRISTINA FORNEY and JUDY GALLEGOS, individually and as representatives of a class of similarly situated persons, on behalf of the MARSH & MCLENNAN COMPANIES 401(K) SAVINGS AND INVESTMENT PLAN,<br><br>        Plaintiffs,<br>  v.<br><br>MARSH & MCLENNAN COMPANIES, INC.; THE BOARD OF TRUSTEES OF MARSH & MCLENNAN COMPANIES, INC.; THE MARSH & MCLENNAN COMPANIES BENEFITS ADMINISTRATION COMMITTEE; THE MARSH & MCLENNAN COMPANIES BENEFITS INVESTMENT COMMITTEE; and DOES No. 1-30, Whose Names Are Currently Unknown,<br><br>        Defendants. | Case No:  1:22-cv-6637<br><br><br>**CLASS ACTION COMPLAINT** |

## I.    **INTRODUCTION**

1.    Plaintiffs, Alfretta Antoine ("Antoine"), Shannon Cave ("Cave"), Christina Forney ("Forney") and Judy Gallegos ("Gallegos") (collectively, "Plaintiffs"), individually in their capacity as participants of the Marsh & McLennan Companies 401(k) Savings and Investment Plan ("Plan"), bring this action ("Action") under 29 U.S.C. § 1132, on behalf of the Plan and a class of similarly-situated participants and beneficiaries of the Plan, against Defendants, Marsh & McLennan Companies, Inc. ("Marsh & McLennan"), the Board of Trustees of Marsh & McLennan Companies, Inc. ("Board"), the Marsh & McLennan Companies Benefits Administration Committee ("Administrative Committee"), the Marsh & McLennan

Companies Benefits Investment Committee ("Investment Committee") (with the Administrative

Committee, "Committees"), and Does No. 1-30, who are members of the Board and the

Committees or other fiduciaries of the Plan and whose names are currently unknown

(collectively, "Defendants"), for breach of their fiduciary duties under the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., and related breaches of applicable

law beginning six years prior to the date the Action is filed and continuing to the date this Action

is filed, or such other date the Court determines is appropriate and just ( "Class Period").

2.      Defined contribution plans (*e.g.*, 401(k) and 401(a) plans) that are qualified as

tax-deferred vehicles have become the primary form of retirement saving in the United States

and, as a result, America's *de facto* retirement system.  Unlike traditional defined benefit

retirement plans, in which the employer typically promises a calculable benefit and assumes the

risk with respect to high fees or underperformance of pension plan assets used to fund defined

benefits, the participants in defined contribution plans bear the risk of high fees and investment

underperformance.

3.      The importance of defined contribution plans to the United States retirement

system has become pronounced as employer-provided defined benefit plans are increasingly rare

as an offered and meaningful employee benefit.

4.      As of December 31, 2020, the Plan had 32,200 participants with account balances

and assets totaling approximately $5.92 billion, placing it in the top 0.1% of all defined

contribution plans by plan size.[1]  Defined contribution plans with substantial assets, like the Plan,

have significant bargaining power and the ability to demand low-cost administrative and

investment management services within the marketplace for administration of defined

---

[1] The BrightScope/ICI Defined Contribution Plan Profile: A Close Look at 401(k) Plans, 2018 (pub. July 2021).

contribution plans and the investment of defined contribution assets. The marketplace for defined contribution retirement plan services is well-established and can be competitive when fiduciaries of defined contribution retirement plans act in an informed and prudent fashion.

5.     Defendants maintain the Plan, and are responsible for selecting, monitoring, and retaining the service provider(s) that provide investment, recordkeeping, and other administrative services. Defendants are fiduciaries under ERISA, and, as such, owe specific duties to the Plan and its participants and beneficiaries, including obligations to act for the exclusive benefit of participants, ensure that the investment options offered through the Plan are prudent and diverse, and ensure that Plan expenses are fair and reasonable in relation the services obtained.

6.     Defendants have breached their fiduciary duties to the Plan. As detailed below, Defendants selected, retained, and/or otherwise ratified poorly-performing investments instead of offering more prudent alternative investments that were readily available at the time Defendants selected and retained the funds at issue and throughout the Class Period. Since Defendants have discretion to select the investments made available to participants, Defendants' breaches are the direct cause of the losses alleged herein.

7.     To remedy these fiduciary breaches and other violations of ERISA, Plaintiffs bring this class action under Sections 404, 409 and 502 of ERISA, 29 U.S.C. §§ 1104, 1109 and 1132, to recover and obtain all losses resulting from each breach of fiduciary duty. In addition, Plaintiffs seek such other equitable or remedial relief for the Plan and the proposed class ("Class") as the Court may deem appropriate and just under the circumstances.

8.     Plaintiffs specifically seek the following relief on behalf of the Plan and the Class:

       a.     A declaratory judgment holding that the acts of Defendants described
              herein violate ERISA and applicable law;

    b.      A permanent injunction against Defendants prohibiting the practices described herein and affirmatively requiring them to act in the best interests of the Plan and its participants;

    c.      Equitable, legal or remedial relief for all losses and/or compensatory damages;

    d.      Attorneys' fees, costs and other recoverable expenses of litigation; and

    e.      Such other and additional legal or equitable relief that the Court deems appropriate and just under all of the circumstances.

## II.    THE PARTIES

9.      Antoine is a former employee of Marsh & McLennan and participant in the Plan under 29 U.S.C. § 1002(7). Antoine is a resident of Forney, Texas. During the Class Period, Antoine maintained an investment through the Plan in the BlackRock LifePath Index Retirement Fund, the S&P 500 Index Fund, the U.S. Bond Index Fund, the Non U.S. Equity Index Fund and the U.S. Extended Market Equity Index Fund.

10.      Cave is a former employee of Marsh & McLennan and participant in the Plan under 29 U.S.C. § 1002(7). Cave is a resident of Raleigh, North Carolina. During the Class Period, Cave maintained an investment through the Plan in the BlackRock LifePath Index 2025 Fund.

11.      Forney is a former employee of Marsh & McLennan and former participant in the Plan under 29 U.S.C. § 1002(7). Forney is a resident of Forney, Texas. During the Class Period, Forney maintained an investment through the Plan in the BlackRock LifePath Index 2050 Fund.

12.      Gallegos is a former employee of Marsh & McLennan and former participant in the Plan under 29 U.S.C. § 1002(7). Gallegos is a resident of Westminster, Colorado. During

the Class Period, Gallegos maintained an investment through the Plan in the BlackRock LifePath Index 2025 Fund and the Marsh & McLennan Companies Stock Fund.

13.     Marsh & McLennan is a public Delaware corporation headquartered in New York, New York.  Marsh & McLennan is a global professional services firm with businesses in insurance brokerage, risk management, reinsurance services, talent management, investment advisory, and management consulting.

14.     The Board appointed "authorized representatives" of Marsh & McLennan, including the Committees, as plan fiduciaries.  Does No. 1-10 are members of the Board who were/are fiduciaries of the Plan under ERISA pursuant to 29 U.S.C. §§ 1002(21)(A) because each exercised discretionary authority to appoint and/or monitor the Committees, which had control over Plan management and/or authority or control over management or disposition of Plan assets.

15.     The Administrative Committee is responsible for the general administration and operation of the Plan and is a fiduciary under ERISA pursuant to 29 U.S.C. §§ 1002 and 1102. The Investment Committee is responsible for the selection and monitoring of the investments made available to participants in the Plan and is a fiduciary under ERISA pursuant to 29 U.S.C. §§ 1002 and 1102.  The Committees maintain their address at Marsh & McLennan's corporate headquarters in New York, New York.  The Committees and their members are appointed by Marsh & McLennan or its delegate to administer the Plan on Marsh & McLennan's behalf.

16.     Does No. 11-30 are the members of the Committees and are fiduciaries of the Plan by virtue of their membership on the Committees or otherwise are fiduciaries to the Plan. Plaintiffs are currently unable to determine the membership of the Committees or the identities of the other fiduciaries of the Plan because, despite reasonable and diligent efforts, the

membership of the Committees and the identities of any other fiduciaries are not publicly

available.  As such, these Defendants are named Does as placeholders.  Plaintiffs will move,

pursuant to Federal Rule of Civil Procedure 15, to amend the Class Action Complaint

("Complaint") to name the members of the Committee, the members of the Board, and other

responsible individuals as defendants as soon as their identities are discovered.

### III.     JURISDICTION AND VENUE

17.     Plaintiffs seek relief on behalf of the Plan pursuant to ERISA's civil enforcement

remedies with respect to fiduciaries and other interested parties and, specifically, under 29

U.S.C. § 1109 and 29 U.S.C. § 1132.

18.     This Court has subject matter jurisdiction over the Action pursuant to 28 U.S.C. §

1331 because the Action arises under the laws of the United States.

19.      Venue is proper in this District pursuant to Section 502(e) of ERISA, 29 U.S.C. §

1332(e), and 28 U.S.C. § 1391 because Marsh & McLennan's principal place of business is in

this District and the Plan is administered from this judicial district.  Further, a substantial part of

the acts and omissions giving rise to the claims asserted herein occurred in this District.

20.     Plaintiffs have standing to bring the Action because they maintained investments

in the Plan in the investment options challenged in the Action during the Class Period.  Section

502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2), authorizes any participant, fiduciary or the

Secretary of Labor to bring suit as a representative of a plan, with any recovery necessarily

flowing to a plan.  As explained herein, the Plan has suffered millions of dollars in losses

resulting from Defendants' fiduciary breaches and remains vulnerable to continuing harm, all

redressable by the Court.  In addition, although standing under Section 502(a)(2) of ERISA, 29

U.S.C. § 1132(a)(2), is established by these Plan-wide injuries, Plaintiffs and all Plan participants

suffered financial harm as a result of the Plan's imprudent investment options and were deprived of the opportunity to invest in prudent options with reasonable fees, among other injuries.

### IV.    FACTUAL ALLEGATIONS

**A.    Background and Plan Structure**

21.     The Plan is a participant-directed 401(k) plan, meaning participants direct the investment of their contributions into various investment options offered by the Plan.  Each participant's account is credited with their participant contributions, applicable employer matching contributions, any discretionary contributions, and earnings or losses thereon.  The Plan pays expenses from Plan assets, and the majority of administrative expenses are paid by participants as a reduction of investment income.  Each participant's account is charged with the amount of distributions taken and an allocation of administrative expenses.  The investment options made available to Plan participants include various mutual funds, collective trust funds and the Marsh & McLennan Companies Stock Fund.

22.     Mutual funds are publicly traded investment vehicles consisting of a pool of monetary contributions collected from many investors for the purpose of investing in a portfolio of equities, bonds, and other securities.  Mutual funds are operated by professional investment advisers, who, like the mutual funds, are registered with the U.S. Securities and Exchange Commission ("SEC").  Mutual funds are subject to SEC regulation and are required to provide certain investment and financial disclosures and information in the form of a prospectus.

23.     Collective trusts are, in essence, mutual funds without the SEC regulation. Collective trusts fall under the regulatory purview of the Office of the Comptroller of the Currency or individual state banking departments.  Collective trusts were first organized under state law in 1927 and were blamed for the market crash in 1929.  As a result, collective trusts

were severely restricted, giving rise to the more transparent and publicly-traded mutual funds described above.  Today, banks create collective trusts only for their trust clients and for employee benefit plans, like the Plan.  Despite their historic lack of transparency, modern collective trust sponsors provide sufficient information for investors to make informed decisions about the merits of investing in collective trusts.  The main advantage of opting for a collective trust, rather than a mutual fund, is the negotiability of the fees; accordingly, larger retirement plans should be able to leverage their size for lower fees.

24.     The Marsh & McLennan Companies Stock Fund is a unitized trust fund which primarily invests in shares of Marsh & McLennan common stock, as well as in short-term investments to provide for the Stock Fund's liquidity needs.

25.     During the Class Period, Plan assets were held in a trust by the Plan trustee, Northern Trust Company.  All investments and asset allocations are performed through this trust instrument.

**B.     Target Date Funds**

26.     A target date fund ("TDF") is an investment vehicle that offers an all-in-one retirement solution through a portfolio of underlying funds that gradually shifts to become more conservative as the assumed target retirement year approaches.  TDFs offer investors dynamic, straightforward asset allocation, while providing both long-term growth and capital preservation.  All TDFs are inherently actively managed, because managers make changes to the allocations to stocks, bonds, and cash over time.  These allocation shifts are referred to as a fund's glide path.

27.     TDF glide paths are managed either "to" or "through" retirement.  A "to retirement" glide path generally assumes participants will withdraw their funds once they reach the presumed retirement age, or soon thereafter.  The asset allocation of a "to retirement" TDF

remains static once the retirement date is reached.  A "through retirement" glide path expects participants will remain invested after reaching retirement and gradually draw down on their funds.  Accordingly, the terminal allocation of a "through" TDF is not reached until a predetermined number of years after the target date.

28.     "To" strategies are managed to protect against the risk of a market decline significantly diminishing assets, while the "through" approach focuses on the risk of outliving savings.  Each strategy treats the other's primary focus as a secondary objective (*i.e.*, most "to" managers "have the objective of limiting portfolio volatility up to retirement as the primary goal, and the income throughout retirement is more of a secondary objective.").[2]  TDFs designed to take investors to retirement typically de-risk faster than their "through" peers, and while this may offer greater potential protection against downside risk, it leaves investors exposed to the potentially destructive, lasting consequences of running out of money in retirement.  As retirees trend toward keeping savings in their retirement plans post-retirement, "through" glide paths have been more widely utilized.[3]  Indeed, of the 28 TDF suites launched in the past decade which remain active, nearly 80% adopt a "through" approach.[4]

29.     The underlying mutual funds that TDF managers choose to populate each asset class can be actively or passively managed.  TDFs comprised of primarily or entirely passive strategies provide broad market exposure at minimal cost and avoid the risk of active management underperformance and style drift.  TDFs filled with actively managed funds tend to

---

[2]Amanda Umpierrez, *Evaluating 'To' vs. 'Through' Glide Paths*, PLANSPONSOR, (Feb. 17, 2021), https://www.plansponsor.com/in-depth/evaluating-vs-glide-paths/

[3]*Id.*

[4]MORNINGSTAR, 2022 TARGET-DATE STRATEGY LANDSCAPE (2022).

provide more diversified asset class exposure while offering the potential for excess returns, particularly in less efficient asset classes where active management tends to outperform.

C.   **Defendants' Breaches of Fiduciary Duties**

30.   As discussed in detail below, Defendants have severely breached their fiduciary duties of prudence and loyalty to the Plan.  Plaintiffs did not acquire actual knowledge regarding Defendants' breaches at issue here until shortly before the Complaint was filed.

### 1.   The Plan's Investment in the BlackRock LifePath Index Funds

31.   Among other investments, the Plan lineup has, since at least December 31, 2009,[5] offered the BlackRock LifePath Index Funds ("BlackRock TDFs"), a suite of ten TDFs.[6]   The BlackRock TDFs are significantly worse performing than many of the mutual fund alternatives offered by TDF providers and, throughout the Class Period, could not have supported an expectation by prudent fiduciaries that their retention in the Plan was justifiable.

32.   Defendants were responsible for crafting the Plan lineup and could have chosen from a wide range of prudent alternative target date families offered by competing TDF providers, which are readily available in the marketplace, but elected to retain the BlackRock TDFs instead, an imprudent decision that has deprived Plan participants of significant growth in their retirement assets.

33.   A simple weighing of the merits and features of all other available TDFs at the beginning of the Class Period would have raised significant concerns for prudent fiduciaries and indicated that the BlackRock TDFs were not a suitable and prudent option for the Plan.  In

---

[5]The Plan's Form 5500s provide a detailed schedule of the Plan's holdings at the end of each calendar year. The suite of BlackRock TDFs appears as a Plan investment option as far back as the 2009 Form 5500, the earliest available public filing.

[6]The Plan offered an eleventh BlackRock TDF, the 2020 vintage, for a substantial part of the Class Period. During the Fourth Quarter of 2019, the 2020 Fund was reorganized into the Retirement Fund, and shareholders of the 2020 Fund received shares of the Retirement Fund.

addition, any objective evaluation of the BlackRock TDFs would have resulted in the selection of a more consistent, better performing, and more appropriate TDF suite.  Instead, as is currently in vogue, Defendants appear to have chased the low fees charged by the BlackRock TDFs without any consideration of their ability to generate return.  Had Defendants carried out their responsibilities in a single-minded manner with an eye focused solely on the interests of the participants, they would have come to this conclusion and acted upon it.  However, Defendants failed to act in the sole interest of Plan participants and breached their fiduciary duties by imprudently selecting, retaining, and failing to appropriately monitor the clearly inferior BlackRock TDFs.

34.     Since the fiduciaries here employed a fundamentally irrational decision-making process (*i.e.*, inconsistent with their duty of prudence) based upon basic economics and established investment theory, they clearly breached their fiduciary duties under ERISA – which are well-understood to be the "highest known to law."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009) (citing *Donovan v. Bierwirth*, 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

35.     Exacerbating Defendants' imprudent decisions to add and retain the BlackRock TDFs is the suite's designation as the Plan's Qualified Default Investment Alternative ("QDIA"). Under DOL regulations, retirement plan fiduciaries can designate one of the investment offerings in a plan's lineup as a QDIA to aid participants who lack the knowledge or confidence to make investment elections for their retirement assets.  If participants do not indicate where their assets should be invested, all contributions are automatically invested in the QDIA.  For this reason, it is vital for fiduciaries to understand the relevant plan participant population and ensure the QDIA is a suitable and prudent option.  Indeed, Plan fiduciaries are responsible for the prudent

selection and continuous monitoring of an appropriate QDIA. The BlackRock TDF with the target year closest to a participant's assumed retirement age (*i.e.*, age 65) has served as the QDIA in the Plan throughout the Class Period.

36.     Given that the vast majority of Plan participants are not sophisticated investors, many, by default, concentrate their retirement assets in TDFs. As such, the impact of Defendants' imprudent selection of TDFs is magnified vis-à-vis other asset categories. Indeed, by December 31, 2020, approximately 17% of the Plan's assets were invested in the BlackRock TDFs.

i.     The Comparator TDFs

37.     Measured against appropriate, available alternative TDFs pursuant to the frameworks employed by prudent fiduciaries, the BlackRock TDFs are a vastly inferior retirement solution and could not have been justifiably retained in the Plan. Throughout the Class Period, there were many TDF offerings that consistently and dramatically outperformed the BlackRock TDFs, providing investors with substantially more capital appreciation. Critically, at the time of Defendants' decisions to select and retain the BlackRock TDFs, those alternatives – unlike the BlackRock TDFs – supported a reasonable expectation of return to justify selection and retention in the Plan. It is apparent, given the continued presence of the BlackRock TDFs in the Plan's investment menu, that Defendants failed to scrutinize the performance of the BlackRock TDFs against any of the more appropriate alternatives in the TDF marketplace in order to determine whether the expected performance of the BlackRock TDFs could support their continued retention in the Plan. Accordingly, the Plan's investment in the BlackRock TDFs has resulted in participants missing out on millions of dollars in retirement

savings growth that could have been achieved through an investment in any of the below alternative TDFs, and indeed many other options.

38.     Prudent fiduciaries evaluate TDF returns not only against an appropriate index or a broad group of all peer TDFs, but also against specific, readily investable alternatives to ensure that participants are benefitting from the current TDF offering.  The managers of the BlackRock TDFs, like those of many TDF suites, have designed a custom benchmark against which their performance can be assessed.  For each TDF vintage, the BlackRock LifePath Index Custom Benchmark is a weighted mix of several market indices that are representative of the asset classes in which the BlackRock TDFs invest.  As this composite benchmark simply mirrors the overall strategy of the series and fails to demonstrate how the investment is performing relative to peers, it is an imperfect evaluative tool.  Rather than demonstrate the success of the BlackRock TDFs in the broader TDF market, as, for example, can be achieved (and is commonly performed) by utilizing the S&P 500 Index to benchmark a domestic large cap equity fund, the BlackRock TDF custom benchmark merely reflects the managers' ability to execute their own particular strategy.  Thus, it is incumbent on plan fiduciaries and a component of the applicable standard of care throughout the Class Period to assess TDFs against readily available prudent alternatives to ensure that participants are best served by the options available to them.

39.     The TDF market is particularly top-heavy; by the end of 2021 the top six largest TDF series managed approximately three-quarters of all TDF assets:

| Target Date Series | Mutual Fund ($B) | CIT ($B) | Total ($B) | Market Share |
|---|---|---|---|---|
| Vanguard Target Retirement | 660 | 530 | 1,190 | 36.4% |
| T. Rowe Price Retirement | 180 | 170 | 350 | 10.7% |
| BlackRock LifePath Index | 61 | 226 | 287 | 8.8% |
| American Funds Target Date Retirement | 239 | 9 | 248 | 7.6% |
| Fidelity Freedom | 221 | - | 221 | 6.8% |
| Fidelity Freedom Index | 106 | 46 | 152 | 4.6% |

40.     Accordingly, four of the five non-BlackRock suites shown above (the "Comparator TDFs") represent an ideal group for comparison, as they represent the most likely alternatives to be selected were the BlackRock TDFs to be replaced.[7]  Prudent fiduciaries are aware of the major offerings in the asset classes represented in a plan.  This is all the more important as it relates to a plan's QDIA, given the gravitation of plan assets to the QDIA and importance of the QDIA to the overall design of a plan's investment menu.  In fact, Defendants could have sought comparative returns data and other metrics for each of the Comparator TDFs in real-time throughout the Class Period from Transamerica Retirement Solutions, LLC ("Transamerica") or the Plan's other service providers,[8] or easily obtained it themselves through just a few clicks of a computer mouse.  When evaluated against the Comparator TDFs, both individually and as a group, the returns of the BlackRock TDFs, at all stages along the glide path from aggressive to conservative, paled in comparison to those of the readily available alternatives.  Accordingly, the analytical frameworks employed by prudent fiduciaries could not have supported a determination that the expected returns of the BlackRock TDFs would justify their retention in the Plan.

41.     Any suggestion that such comparison is inappropriate because "to" glide paths, like that of the BlackRock TDFs, adopt a more conservative approach is misleading.  While the

---

[7] The other TDF suite in the largest six by market share during the relevant period was the Fidelity Freedom Funds ("Freedom Funds"), which do not represent an appropriate comparator.  The Freedom Funds would have been an imprudent selection for the Plan for the duration of the Class Period due to myriad quantitative and qualitative red flags after undergoing a strategy overhaul in 2014.  As a result of these issues, the Freedom Funds lost considerable assets and market share after their strategy overhaul in 2014.  Yet even the anemic and imprudent Freedom Funds outperformed the BlackRock TDFs during the Class Period.  While the Freedom Funds were not a suitable alternative for the Plan, a fiduciary applying the requisite scrutiny to the BlackRock TDFs would have been aware of their underperformance compared to the Freedom Funds, despite the issues plaguing the Freedom Funds.  This is even further confirmation of the inability of the BlackRock TDFs to provide competitive returns throughout the Class Period.

[8] The Plan's Form 5500 notes that "certain investment advisory and consulting services are performed by employees of the Company or its subsidiaries."

BlackRock TDFs de-risk at a quicker pace than most of the Comparator TDFs, the resulting equity allocation discrepancy is only reflected in its two most conservative vintages, the 2025 and Retirement TDFs.  Indeed, the BlackRock TDF series has the industry's most aggressive glide path for investors furthest from retirement and maintains a comparable equity allocation to its peers until an investor is approaching retirement.[9]

| Percentage of Portfolio in Equities | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Target Year | 2065 | 2060 | 2055 | 2050 | 2045 | 2040 | 2035 | 2030 | 2025 | 2020 | 2015 | 2010 | 2005 | Retire |
| American Funds Trgt Date Retire | 85 | 85 | 85 | 85 | 84 | 81 | 71 | 59 | 50 | 45 | 42 | 39 | - | - |
| Fidelity Freedom Index | 90 | 90 | 90 | 90 | 90 | 89 | 77 | 62 | 56 | 49 | 40 | 30 | 21 | 19 |
| T. Rowe Price Retirement | 94 | 94 | 94 | 94 | 92 | 88 | 79 | 69 | 58 | 51 | 47 | 44 | 41 | - |
| Vanguard Target Retirement | 87 | 87 | 87 | 87 | 84 | 76 | 69 | 62 | 54 | 42 | 29 | - | - | 29 |
| BlackRock LifePath Index | 97 | 97 | 97 | 96 | 91 | 82 | 72 | 60 | 48 | 40 | - | - | - | - |
| Comparator TDF Average | 89 | 89 | 89 | 89 | 88 | 84 | 74 | 63 | 55 | 47 | | | | |
| BlackRock +/- Average | 8 | 8 | 8 | 7 | 4 | -2 | -2 | -3 | -7 | -7 | | | | |

42.     The BlackRock TDFs are considerably more aggressive than the Comparator TDFs from the vintage intended for the youngest investors through those with a target retirement date of 2050.  For the 2045 through 2030 vintages, the latter of which is managed for investors currently within ten years of their anticipated retirement date, the difference in equity allocations between the BlackRock TDFs and the Comparator TDFs is negligible.  Though the BlackRock TDFs become considerably more conservative in the 2025 vintage and at retirement, each of the Comparator TDFs ultimately reach a terminal equity allocation that is at or below the 40% of the BlackRock TDFs.

---

[9]Current equity allocations were compiled from Vanguard Advisor's online "Compare Products" tool. Where an equity allocation is blank, the TDF does not offer that respective vintage.  The equity allocation in the BlackRock TDFs' Retirement vintage is shown in the 2020 column.



ii.     Performance Comparisons

43.     The contention that the performance of a "to," ostensibly more conservative, TDF cannot be compared to more aggressive series relies on the presumption that a considerably heavier weight to equities will likely produce greater returns, as compensation for the assumption of greater risk.  The industry-leading equity allocation of the longest-dated vintages of the BlackRock TDFs has refuted this notion consistently and dramatically throughout the Class Period.  The repeatedly inferior returns of the vintages serving young investors are matched by similar performance shortcomings across the BlackRock TDFs' glide path.[10]  The below performance data, comparing the three- and five-year annualized returns[11] of the BlackRock

---

[10]The only exception is the BlackRock Retirement TDF, which has regularly generated better trailing returns than the two Comparator TDFs that also offer a Retirement vintage (Fidelity Freedom Index and Vanguard Target Retirement).  But the outperformance of a single vintage does not exonerate the rest of the suite's putrid performance.  Indeed, TDFs are evaluated and selected as a single suite.  Moreover, as the BlackRock TDFs are a "to retirement" investment, they are managed with the expectation that investors will withdraw their assets from the Plan upon reaching the Retirement vintage or shortly thereafter.

[11]Virtually all competent investment advisors emphasize that fiduciaries should focus on three- and five-year returns

TDFs to those of the Comparator TDFs, represents information that was easily accessible to Defendants during the Class Period and would have been reviewed by prudent fiduciaries. Defendants could have sought this comparative returns data at any time from Transamerica in its capacity as recordkeeper (since Transamerica regularly provides such data to their customers), as well as from the Plan's other service providers, or, in the alternative, obtained it themselves in real time through just a few clicks of a computer mouse. At any point in the Class Period, such data would have been sufficient to convince a fiduciary following a prudent process to investigate alternatives and ultimately replace the BlackRock TDFs.

- By the metrics available to Defendants at the start of the Class Period, as of the most recent quarter-end, the three- and five-year annualized returns of the 2045 through 2055[12] BlackRock TDFs, each of which possessed a considerably greater equity allocation than the average of the Comparator TDFs, trailed those of the Comparator TDFs and had consistently done so for many consecutive quarters. The entire suite, bar the Retirement vintage, ranked in the bottom half among the Comparator TDFs. As of the end of the Second Quarter of 2016, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below shortcomings.

| 3-Year Return as of 2Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.52 | 5.80 | 6.06 | 6.22 | 6.39 | 6.59 | 6.80 | 7.00 |
| Best Performing Comparator TDF | 7.57 | 8.29 | 8.62 | 8.59 | 8.61 | 8.63 | 8.65 | 8.61 |
| Worst Performing Comparator TDF | 5.54 | 6.26 | 6.42 | 6.71 | 6.75 | 6.82 | 6.89 | 6.98 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | 4 |

---

to evaluate the performance of an investment over periods most closely approximating a market cycle and persistent poor performance over those periods demands investigation and action by fiduciaries. Any suggestion that a TDF has a lifespan of 10 or 25 years and, therefore, performance metrics of three to five years should not be considered is nonsensical because (a) at any point in time, many vintages of TDFs have shorter lifespans than 10, and especially 25, years, and (b) most importantly, in light of employment mobility in the United States (with the average employee holding a position for slightly more than four years), competent and informed fiduciaries understand that many participants will not maintain their TDF investments within a defined contribution plan such as the Plan until the actual target date of the given investment. Thus, three- and five-year performance is paramount in the minds of any competent fiduciary of a retirement plan.

[12]The BlackRock 2060 TDF did not have a three-year track record until the Fourth Quarter of 2017. The BlackRock 2065 TDF did not launch until September 2019.

| 5-Year Return as of 2Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.39 | 5.69 | 5.96 | 6.17 | 6.34 | 6.52 | 6.70 | 6.97 |
| Best Performing Comparator TDF | 7.64 | 8.45 | 8.75 | 8.69 | 8.73 | 8.73 | 8.74 | 8.74 |
| Worst Performing Comparator TDF | 5.08 | 5.75 | 5.88 | 6.18 | 6.23 | 6.29 | 6.28 | 6.41 |
| BlackRock Rank (out of 5) | 4 | Last | 4 | Last | 4 | 4 | 4 | 4 |

- As of the end of the **Third Quarter of 2016**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 3Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.07 | 5.33 | 5.56 | 5.74 | 5.91 | 6.08 | 6.20 | 6.30 |
| Best Performing Comparator TDF | 6.67 | 7.11 | 7.55 | 7.67 | 7.70 | 7.75 | 7.77 | 7.75 |
| Worst Performing Comparator TDF | 5.26 | 5.81 | 6.12 | 6.35 | 6.36 | 6.39 | 6.42 | 6.45 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 7.72 | 8.54 | 9.24 | 9.87 | 10.44 | 10.95 | 11.44 | 11.86 |
| Best Performing Comparator TDF | 10.65 | 12.01 | 12.76 | 12.91 | 13.07 | 13.11 | 13.13 | 13.13 |
| Worst Performing Comparator TDF | 7.65 | 8.81 | 9.25 | 10.13 | 10.22 | 10.36 | 10.53 | 10.73 |
| BlackRock Rank (out of 5) | 4 | Last | Last | Last | 4 | 4 | 4 | 4 |

- As of the end of the **Fourth Quarter of 2016**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 4Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.68 | 3.88 | 4.05 | 4.19 | 4.30 | 4.38 | 4.41 | 4.41 |
| Best Performing Comparator TDF | 4.61 | 4.67 | 5.03 | 5.15 | 5.19 | 5.28 | 5.28 | 5.26 |
| Worst Performing Comparator TDF | 3.96 | 4.23 | 4.52 | 4.56 | 4.61 | 4.62 | 4.65 | 4.64 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 4Q16 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.45 | 7.19 | 7.84 | 8.45 | 8.94 | 9.42 | 9.82 | 10.16 |
| Best Performing Comparator TDF | 8.96 | 10.40 | 11.14 | 11.31 | 11.46 | 11.51 | 11.52 | 11.50 |
| Worst Performing Comparator TDF | 6.55 | 7.59 | 8.12 | 8.94 | 9.02 | 9.16 | 9.26 | 9.45 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | 4 | 4 | 4 |

- As of the end of the **First Quarter of 2017**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 1Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.09 | 4.48 | 4.83 | 5.14 | 5.40 | 5.56 | 5.62 | 5.62 |
| Best Performing Comparator TDF | 5.37 | 5.72 | 6.38 | 6.73 | 6.84 | 6.99 | 7.01 | 7.00 |
| Worst Performing Comparator TDF | 4.78 | 5.14 | 5.72 | 5.95 | 6.14 | 6.17 | 6.20 | 6.17 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 1Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.76 | 6.42 | 7.01 | 7.56 | 8.01 | 8.40 | 8.68 | 8.92 |
| Best Performing Comparator TDF | 8.21 | 9.36 | 10.13 | 10.43 | 10.59 | 10.67 | 10.69 | 10.66 |
| Worst Performing Comparator TDF | 6.04 | 6.91 | 7.56 | 8.27 | 8.33 | 8.42 | 8.46 | 8.61 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

- As of the end of the Second Quarter of 2017, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 2Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.67 | 4.08 | 4.45 | 4.79 | 5.07 | 5.23 | 5.25 | 5.19 |
| Best Performing Comparator TDF | 5.10 | 5.57 | 6.08 | 6.57 | 6.69 | 6.85 | 6.87 | 6.86 |
| Worst Performing Comparator TDF | 4.41 | 4.73 | 5.35 | 5.66 | 5.83 | 5.82 | 5.85 | 5.80 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 2Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.51 | 7.34 | 8.08 | 8.76 | 9.36 | 9.87 | 10.24 | 10.54 |
| Best Performing Comparator TDF | 9.27 | 10.47 | 11.42 | 11.85 | 12.07 | 12.16 | 12.16 | 12.16 |
| Worst Performing Comparator TDF | 6.96 | 8.01 | 8.77 | 9.73 | 9.82 | 9.93 | 10.01 | 10.19 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

- As of the end of the Third Quarter of 2017, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 3Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.14 | 5.77 | 6.34 | 6.85 | 7.30 | 7.57 | 7.67 | 7.68 |
| Best Performing Comparator TDF | 6.83 | 7.46 | 8.03 | 8.61 | 8.85 | 9.01 | 9.05 | 9.05 |
| Worst Performing Comparator TDF | 5.92 | 6.38 | 7.19 | 7.61 | 7.97 | 8.02 | 8.06 | 8.02 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.18 | 7.02 | 7.78 | 8.47 | 9.05 | 9.55 | 9.87 | 10.11 |
| Best Performing Comparator TDF | 8.81 | 10.10 | 11.12 | 11.65 | 11.90 | 12.00 | 12.04 | 12.02 |
| Worst Performing Comparator TDF | 6.71 | 7.67 | 8.54 | 9.47 | 9.56 | 9.65 | 9.70 | 9.85 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

- As of the end of the Fourth Quarter of 2017, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 4Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.66 | 6.48 | 7.21 | 7.89 | 8.48 | 8.85 | 8.97 | 8.96 | 8.96 |
| Best Performing Comparator TDF | 7.41 | 8.11 | 8.75 | 9.56 | 9.89 | 10.09 | 10.16 | 10.15 | 9.68 |
| Worst Performing Comparator TDF | 6.55 | 7.07 | 7.85 | 8.39 | 8.91 | 9.14 | 9.16 | 9.11 | 9.10 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | 4 |

| 5-Year Return as of 4Q17 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.58 | 7.51 | 8.32 | 9.09 | 9.75 | 10.28 | 10.61 | 10.82 |
| Best Performing Comparator TDF | 9.09 | 10.36 | 11.50 | 12.13 | 12.45 | 12.57 | 12.62 | 12.60 |
| Worst Performing Comparator TDF | 7.30 | 8.29 | 9.30 | 10.36 | 10.46 | 10.54 | 10.60 | 10.74 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 |

- As of the end of the First Quarter of 2018, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 1Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.63 | 5.37 | 6.03 | 6.65 | 7.17 | 7.49 | 7.60 | 7.59 | 7.59 |
| Best Performing Comparator TDF | 6.50 | 7.12 | 7.86 | 8.86 | 9.20 | 9.41 | 9.53 | 9.51 | 9.49 |
| Worst Performing Comparator TDF | 5.62 | 6.06 | 6.83 | 7.35 | 7.86 | 8.10 | 8.11 | 8.05 | 8.06 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 1Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.51 | 6.30 | 6.99 | 7.63 | 8.18 | 8.62 | 8.84 | 8.98 |
| Best Performing Comparator TDF | 7.92 | 8.83 | 9.94 | 10.63 | 10.93 | 11.07 | 11.12 | 11.12 |
| Worst Performing Comparator TDF | 6.31 | 7.12 | 8.07 | 8.97 | 9.04 | 9.09 | 9.14 | 9.21 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the Second Quarter of 2018, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 2Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.10 | 5.89 | 6.60 | 7.26 | 7.83 | 8.19 | 8.32 | 8.30 | 8.31 |
| Best Performing Comparator TDF | 6.64 | 7.27 | 8.16 | 9.19 | 9.56 | 9.76 | 9.88 | 9.90 | 9.89 |
| Worst Performing Comparator TDF | 6.04 | 6.49 | 7.19 | 7.66 | 8.14 | 8.40 | 8.40 | 8.37 | 8.37 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 2Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.99 | 6.77 | 7.47 | 8.10 | 8.66 | 9.07 | 9.28 | 9.40 |
| Best Performing Comparator TDF | 8.06 | 8.89 | 9.86 | 10.61 | 10.91 | 11.06 | 11.15 | 11.12 |
| Worst Performing Comparator TDF | 6.79 | 7.58 | 8.54 | 9.31 | 9.49 | 9.53 | 9.58 | 9.64 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the **Third Quarter of 2018**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 3Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 7.27 | 8.60 | 9.80 | 10.95 | 11.94 | 12.55 | 12.74 | 12.72 | 12.70 |
| Best Performing Comparator TDF | 9.61 | 10.59 | 11.56 | 13.05 | 13.45 | 13.76 | 13.91 | 13.91 | 13.87 |
| Worst Performing Comparator TDF | 8.40 | 9.70 | 10.66 | 11.61 | 12.54 | 12.91 | 12.90 | 12.89 | 12.89 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.58 | 6.34 | 7.02 | 7.64 | 8.20 | 8.59 | 8.75 | 8.81 |
| Best Performing Comparator TDF | 7.32 | 8.01 | 8.98 | 9.79 | 10.08 | 10.26 | 10.35 | 10.32 |
| Worst Performing Comparator TDF | 6.55 | 7.24 | 8.13 | 8.69 | 9.17 | 9.26 | 9.28 | 9.30 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the **Fourth Quarter of 2018**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 4Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.71 | 5.23 | 5.70 | 6.14 | 6.51 | 6.69 | 6.72 | 6.70 | 6.69 |
| Best Performing Comparator TDF | 5.72 | 6.12 | 6.92 | 7.43 | 7.62 | 7.77 | 7.83 | 7.81 | 7.81 |
| Worst Performing Comparator TDF | 5.32 | 5.73 | 6.07 | 6.41 | 6.75 | 6.78 | 6.77 | 6.77 | 6.75 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 4Q18 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.70 | 4.00 | 4.27 | 4.51 | 4.70 | 4.80 | 4.82 | 4.81 |
| Best Performing Comparator TDF | 4.69 | 5.00 | 5.63 | 5.95 | 6.05 | 6.17 | 6.19 | 6.17 |
| Worst Performing Comparator TDF | 4.24 | 4.50 | 4.82 | 4.99 | 5.10 | 5.13 | 5.12 | 5.10 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the **First Quarter of 2019**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 1Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.36 | 7.38 | 8.28 | 9.14 | 9.89 | 10.34 | 10.48 | 10.47 | 10.45 |
| Best Performing Comparator TDF | 8.24 | 9.05 | 9.79 | 10.88 | 11.28 | 11.50 | 11.62 | 11.62 | 11.58 |
| Worst Performing Comparator TDF | 7.12 | 8.18 | 8.87 | 9.52 | 10.20 | 10.43 | 10.43 | 10.43 | 10.42 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | 4 | 4 | 4 |

| 5-Year Return as of 1Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.70 | 5.26 | 5.75 | 6.19 | 6.57 | 6.80 | 6.89 | 6.88 |
| Best Performing Comparator TDF | 5.93 | 6.41 | 7.12 | 7.77 | 7.98 | 8.12 | 8.19 | 8.18 |
| Worst Performing Comparator TDF | 5.54 | 5.92 | 6.39 | 6.69 | 6.96 | 7.08 | 7.08 | 7.05 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the Second Quarter of 2019, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 2Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.65 | 7.69 | 8.61 | 9.48 | 10.24 | 10.68 | 10.82 | 10.81 | 10.80 |
| Best Performing Comparator TDF | 8.75 | 9.67 | 10.51 | 11.37 | 11.69 | 11.83 | 11.95 | 11.92 | 11.90 |
| Worst Performing Comparator TDF | 7.27 | 8.39 | 9.39 | 10.09 | 10.79 | 11.05 | 11.03 | 11.04 | 11.03 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 2Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.63 | 5.14 | 5.58 | 5.99 | 6.33 | 6.52 | 6.57 | 6.53 |
| Best Performing Comparator TDF | 5.79 | 6.26 | 6.90 | 7.54 | 7.74 | 7.90 | 7.97 | 7.94 |
| Worst Performing Comparator TDF | 5.48 | 5.82 | 6.22 | 6.48 | 6.72 | 6.86 | 6.85 | 6.82 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the Third Quarter of 2019, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 3Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.25 | 7.05 | 7.74 | 8.40 | 8.96 | 9.28 | 9.37 | 9.37 | 9.35 |
| Best Performing Comparator TDF | 7.59 | 8.28 | 9.22 | 10.04 | 10.04 | 10.12 | 10.21 | 10.19 | 10.16 |
| Worst Performing Comparator TDF | 6.66 | 7.52 | 8.29 | 8.78 | 9.28 | 9.41 | 9.42 | 9.41 | 9.41 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q19 | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.22 | 5.73 | 6.16 | 6.56 | 6.90 | 7.09 | 7.15 | 7.15 |
| Best Performing Comparator TDF | 6.27 | 6.74 | 7.16 | 7.75 | 7.95 | 8.09 | 8.14 | 8.13 |
| Worst Performing Comparator TDF | 5.80 | 6.33 | 6.67 | 6.92 | 7.15 | 7.23 | 7.24 | 7.21 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the Fourth Quarter of 2019, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 4Q19 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 8.80 | 9.75 | 10.65 | 11.44 | 11.92 | 12.10 | 12.10 | 12.08 |
| Best Performing Comparator TDF | 10.34 | 11.09 | 12.28 | 12.76 | 12.96 | 13.11 | 13.11 | 13.05 |
| Worst Performing Comparator TDF | 9.47 | 10.24 | 10.86 | 11.48 | 11.80 | 11.80 | 11.80 | 11.79 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | 4 | 4 | 4 | 4 |

| 5-Year Return as of 4Q19 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.40 | 7.04 | 7.63 | 8.14 | 8.45 | 8.55 | 8.55 | 8.55 |
| Best Performing Comparator TDF | 7.60 | 8.10 | 8.99 | 9.30 | 9.45 | 9.55 | 9.54 | 8.86 |
| Worst Performing Comparator TDF | 6.99 | 7.41 | 7.81 | 8.20 | 8.41 | 8.41 | 8.38 | 8.38 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | 4 | 4 | 4 | 3 (of 4) |

- As of the end of the First Quarter of 2020, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 1Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.23 | 2.76 | 2.31 | 1.85 | 1.49 | 1.29 | 1.26 | 1.25 |
| Best Performing Comparator TDF | 4.00 | 4.11 | 3.96 | 3.77 | 3.78 | 3.79 | 3.80 | 3.79 |
| Worst Performing Comparator TDF | 2.29 | 2.23 | 2.10 | 2.03 | 1.77 | 1.79 | 1.78 | 1.79 |
| BlackRock Rank (out of 5) | 3 | 4 | 4 | Last | Last | Last | Last | Last |

| 5-Year Return as of 1Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.45 | 3.32 | 3.19 | 3.01 | 2.85 | 2.75 | 2.73 | 2.73 |
| Best Performing Comparator TDF | 4.49 | 4.77 | 4.87 | 4.81 | 4.89 | 4.91 | 4.91 | 4.89 |
| Worst Performing Comparator TDF | 3.36 | 3.43 | 3.41 | 3.42 | 3.21 | 3.23 | 3.19 | 3.20 |
| BlackRock Rank (out of 5) | 4 | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the Second Quarter of 2020, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 2Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.15 | 6.17 | 6.19 | 6.16 | 6.13 | 6.09 | 6.09 | 6.08 |
| Best Performing Comparator TDF | 7.04 | 7.52 | 8.23 | 8.38 | 8.50 | 8.63 | 8.62 | 8.59 |
| Worst Performing Comparator TDF | 6.21 | 6.39 | 6.45 | 6.50 | 6.41 | 6.42 | 6.40 | 6.39 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 2Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 5.84 | 6.06 | 6.26 | 6.39 | 6.47 | 6.48 | 6.48 | 6.48 |
| Best Performing Comparator TDF | 6.89 | 7.41 | 8.07 | 8.24 | 8.37 | 8.47 | 8.47 | 8.45 |
| Worst Performing Comparator TDF | 6.29 | 6.47 | 6.62 | 6.76 | 6.79 | 6.79 | 6.77 | 6.76 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the **Third Quarter of 2020**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 3Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 6.62 | 6.81 | 6.98 | 7.09 | 7.18 | 7.20 | 7.22 | 7.20 |
| Best Performing Comparator TDF | 7.37 | 7.93 | 8.75 | 9.05 | 9.18 | 9.34 | 9.30 | 9.28 |
| Worst Performing Comparator TDF | 6.86 | 7.04 | 7.16 | 7.27 | 7.32 | 7.32 | 7.31 | 7.31 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

| 5-Year Return as of 3Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 7.95 | 8.55 | 9.12 | 9.58 | 9.87 | 9.95 | 9.96 | 9.94 |
| Best Performing Comparator TDF | 9.14 | 9.96 | 10.99 | 11.34 | 11.52 | 11.65 | 11.63 | 11.59 |
| Worst Performing Comparator TDF | 8.60 | 9.07 | 9.53 | 9.97 | 10.13 | 10.13 | 10.12 | 10.12 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | Last | Last | Last |

- As of the end of the **Fourth Quarter of 2020**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 4Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 8.25 | 8.81 | 9.34 | 9.79 | 10.15 | 10.33 | 10.37 | 10.36 |
| Best Performing Comparator TDF | 9.40 | 9.98 | 11.19 | 11.76 | 11.96 | 12.12 | 12.11 | 12.11 |
| Worst Performing Comparator TDF | 8.73 | 9.16 | 9.50 | 9.85 | 10.20 | 10.24 | 10.22 | 10.22 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | 4 | 4 | 4 |

| 5-Year Return as of 4Q20 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 9.19 | 10.02 | 10.81 | 11.48 | 11.97 | 12.16 | 12.18 | 12.17 |
| Best Performing Comparator TDF | 10.63 | 11.34 | 12.44 | 12.99 | 13.22 | 13.36 | 13.35 | 13.35 |
| Worst Performing Comparator TDF | 9.87 | 10.51 | 11.11 | 11.71 | 12.09 | 12.10 | 12.09 | 12.08 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | 4 | 4 | 4 |

- As of the end of the **First Quarter of 2021**, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 1Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 9.07 | 10.00 | 10.89 | 11.66 | 12.30 | 12.62 | 12.68 | 12.67 |
| Best Performing Comparator TDF | 10.64 | 11.45 | 12.37 | 13.07 | 13.29 | 13.47 | 13.45 | 13.41 |
| Worst Performing Comparator TDF | 9.62 | 10.26 | 10.86 | 11.43 | 12.03 | 12.09 | 12.07 | 12.06 |
| BlackRock Rank (out of 5) | Last | Last | 4 | 4 | 4 | 4 | 3 | 3 |

| 5-Year Return as of 1Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 9.02 | 10.09 | 11.12 | 12.02 | 12.67 | 12.95 | 12.98 | 12.97 |
| Best Performing Comparator TDF | 11.14 | 12.09 | 13.08 | 13.75 | 14.02 | 14.19 | 14.18 | 14.15 |
| Worst Performing Comparator TDF | 9.95 | 10.77 | 11.57 | 12.36 | 12.89 | 12.93 | 12.92 | 12.91 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | 4 | 4 | 4 |

- As of the end of the Second Quarter of 2021, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 2Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 10.39 | 11.50 | 12.57 | 13.49 | 14.26 | 14.67 | 14.75 | 14.74 |
| Best Performing Comparator TDF | 12.24 | 13.18 | 14.02 | 14.80 | 15.25 | 15.27 | 15.24 | 15.22 |
| Worst Performing Comparator TDF | 11.06 | 11.87 | 12.60 | 13.31 | 14.07 | 14.15 | 14.13 | 14.13 |
| BlackRock Rank (out of 5) | Last | Last | Last | 4 | 4 | 3 | 3 | 3 |

| 5-Year Return as of 2Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 9.53 | 10.75 | 11.92 | 12.96 | 13.71 | 14.05 | 14.09 | 14.07 |
| Best Performing Comparator TDF | 11.85 | 12.94 | 13.88 | 14.69 | 15.08 | 15.11 | 15.11 | 15.09 |
| Worst Performing Comparator TDF | 10.40 | 11.49 | 12.39 | 13.30 | 13.93 | 13.97 | 13.96 | 13.96 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | 4 | 4 | 4 |

- As of the end of the Third Quarter of 2021, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 3Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 9.48 | 10.38 | 11.24 | 11.98 | 12.62 | 12.96 | 13.03 | 13.02 |
| Best Performing Comparator TDF | 11.24 | 12.05 | 12.83 | 13.49 | 13.93 | 13.92 | 13.88 | 13.88 |
| Worst Performing Comparator TDF | 9.86 | 10.45 | 11.01 | 11.55 | 12.17 | 12.24 | 12.24 | 12.23 |
| BlackRock Rank (out of 5) | Last | Last | 4 | 4 | 3 | 3 | 3 | 3 |

| 5-Year Return as of 3Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 8.83 | 9.92 | 10.97 | 11.88 | 12.55 | 12.85 | 12.89 | 12.88 |
| Best Performing Comparator TDF | 10.78 | 11.75 | 12.79 | 13.52 | 13.79 | 13.99 | 13.98 | 13.97 |
| Worst Performing Comparator TDF | 9.61 | 10.44 | 11.24 | 12.03 | 12.62 | 12.66 | 12.65 | 12.64 |
| BlackRock Rank (out of 5) | Last | Last | Last | Last | Last | 4 | 4 | 4 |

- As of the end of the Fourth Quarter of 2021, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 4Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 13.26 | 15.03 | 16.74 | 18.26 | 19.51 | 20.15 | 20.26 | 20.25 |
| Best Performing Comparator TDF | 15.78 | 17.25 | 18.75 | 19.96 | 20.36 | 20.53 | 20.54 | 20.51 |
| Worst Performing Comparator TDF | 14.17 | 15.45 | 16.66 | 17.89 | 19.06 | 19.19 | 19.18 | 19.17 |
| BlackRock Rank (out of 5) | Last | Last | 4 | 4 | 3 | 3 | 3 | 3 |

| 5-Year Return as of 4Q21 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 9.54 | 10.74 | 11.88 | 12.90 | 13.67 | 14.03 | 14.09 | 14.07 |
| Best Performing Comparator TDF | 11.51 | 12.53 | 13.97 | 14.75 | 15.02 | 15.17 | 15.17 | 15.13 |
| Worst Performing Comparator TDF | 10.35 | 11.23 | 12.06 | 12.88 | 13.55 | 13.62 | 13.61 | 13.61 |
| BlackRock Rank (out of 5) | Last | Last | Last | 4 | 4 | 3 | 3 | 3 |

- As of the end of the First Quarter of 2022, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 1Q22 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 8.34 | 9.65 | 10.89 | 11.98 | 12.89 | 13.35 | 13.44 | 13.42 |
| Best Performing Comparator TDF | 10.14 | 11.07 | 12.36 | 13.08 | 13.27 | 13.27 | 13.13 | 13.13 |
| Worst Performing Comparator TDF | 8.92 | 9.84 | 10.77 | 11.68 | 12.61 | 12.74 | 12.71 | 12.71 |
| BlackRock Rank (out of 5) | Last | Last | 4 | 4 | 3 | 1 | 1 | 1 |

| 5-Year Return as of 1Q22 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 7.58 | 8.64 | 9.64 | 10.52 | 11.19 | 11.51 | 11.56 | 11.54 |
| Best Performing Comparator TDF | 9.06 | 9.85 | 11.14 | 11.72 | 11.89 | 11.95 | 11.86 | 11.82 |
| Worst Performing Comparator TDF | 8.14 | 8.85 | 9.57 | 10.28 | 10.89 | 10.96 | 10.95 | 10.95 |
| BlackRock Rank (out of 5) | Last | Last | 4 | 4 | 3 | 2 | 2 | 2 |

- As of the end of the Second Quarter of 2022, a fiduciary prudently monitoring the BlackRock TDFs would have observed the below performance issues.

| 3-Year Return as of 2Q22 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 3.55 | 4.28 | 4.97 | 5.54 | 6.00 | 6.20 | 6.23 | 6.21 |
| Best Performing Comparator TDF | 5.06 | 5.46 | 6.33 | 6.48 | 6.43 | 6.25 | 5.99 | 5.90 |
| Worst Performing Comparator TDF | 3.49 | 4.15 | 4.80 | 5.35 | 5.67 | 5.68 | 5.68 | 5.65 |
| BlackRock Rank (out of 5) | 4 | 3 | 4 | 4 | 2 | 2 | 1 | 1 |

| 5-Year Return as of 2Q22 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 | 2060 |
|---|---|---|---|---|---|---|---|---|
| BlackRock TDF | 4.82 | 5.48 | 6.10 | 6.62 | 6.99 | 7.14 | 7.16 | 7.14 |
| Best Performing Comparator TDF | 5.91 | 6.52 | 7.39 | 7.60 | 7.64 | 7.59 | 7.41 | 7.35 |
| Worst Performing Comparator TDF | 5.07 | 5.50 | 5.96 | 6.42 | 6.80 | 6.81 | 6.80 | 6.79 |
| BlackRock Rank (out of 5) | Last | Last | 4 | 4 | 2 | 2 | 2 | 2 |

44.     The BlackRock TDFs dramatically, repeatedly underperformed the average return of the Comparator TDFs for virtually the entire relevant period, as demonstrated in the charts below comparing the three- and five-year annualized returns of several representative vintages of the BlackRock TDFs to those of the same iterations of the Comparator TDFs, namely the 2025, 2040, and 2055 TDFs, which are the second-shortest dated (2025) and second-longest dated (2055) BlackRock TDFs, as well as the fund that represents the midpoint of the nine vintages for which there were at least three-year trailing returns (2040).  These three vintages represent conservative, moderate and aggressive stages along the BlackRock TDF glidepath and are representative of the shortcomings of the entire suite.





45.     These returns, and all returns cited in this Complaint, are annualized, meaning the differences in the returns between the BlackRock TDFs and Comparator TDFs are equivalent to the specified difference in *each* of the three or five years in the period *compounded*.  This is not the same as saying the funds underperformed by the specified amount over the entire time period.  These are persistent and substantial shortcomings that could not have supported a determination by prudent fiduciaries that the BlackRock TDFs could be justifiably retained in the Plan.

46.     Again, the above information was readily obtainable and computable by Defendants in real time throughout the relevant period.  Defendants, however, neglected to undertake any analysis of the BlackRock TDFs against appropriate peers using the above or other important performance metrics.  If Defendants had taken their fiduciary duties seriously during the Class Period, they would have replaced the BlackRock TDFs with a suitable alternative TDF.  Their failure to do so caused Plan participants to miss out on substantial investment returns for their retirement savings.

47.     The consistently deplorable performance of the BlackRock TDFs was also visible at the suite level throughout the pertinent period.  The below charts demonstrate the rolling out- or underperformance of the BlackRock TDFs versus each of the Comparator TDFs, weighting the returns of each distinct vintage equally to produce an aggregate suite-level return, another form of TDF analysis regularly undertaken by all investment advisors and competent fiduciaries.

<u>BlackRock Rolling Returns vs American Funds</u>





BlackRock Rolling Returns vs Fidelity Freedom Index





BlackRock Rolling Returns vs T. Rowe Price





BlackRock Rolling Returns vs Vanguard





48.    The returns of each vintage of a TDF suite, however, are not experienced by a Plan in equal measure, as Plan assets are distributed in different quantities across the glide path depending on a multitude of Plan specific factors.  Accordingly, prudent fiduciaries will perform

the same analysis as set forth above to compare aggregate suite-level returns that are asset-

weighted. [13]

### BlackRock Rolling Returns vs American Funds





---

[13]Returns are weighted according to the asset levels invested in each vintage of the BlackRock TDFs at the start of the Class Period. For example, if the Plan had $100 million in total assets in the BlackRock TDFs, $10 million of which was invested in the 2030 vintage, the returns of the 2030 vintage would be given a 10% weight in the performance composite.

BlackRock Rolling Returns vs Fidelity Freedom Index





BlackRock Rolling Returns vs T. Rowe Price





BlackRock Rolling Returns vs Vanguard





49.     Defendants had immediate access to historical and then-current returns data for the BlackRock TDFs, and could have sought comparative data from Transamerica and/or the Plan's other service providers, or obtained it themselves in real time through just a few clicks of a computer mouse.

50.     The troubling pattern identified above, which persisted for the entire Class Period, was ignored by Defendants, who neglected to appropriately scrutinize the BlackRock TDFs against any of the many superior TDFs available in the market.  If Defendants had taken their fiduciary duties seriously during the Class Period, they would have replaced the BlackRock TDFs with a suitable alternative TDF suite.  Their failure to do so caused Plan participants to miss out on substantial investment returns for their retirement savings.

### 2.     The Plan's Investment in the Mercer Emerging Markets Fund

51.     Defendants also acted imprudently and disloyally in selecting and retaining the Mercer Emerging Markets Fund ("Mercer Fund") in the Plan.  Although the Mercer Fund was removed from the Plan lineup in November 2019, the fund had such a consistently poor track record as measured against both its manager-selected benchmark, the MSCI Emerging Markets Index, and its emerging market fund peers (*i.e.*, funds in the same Morningstar category) that the only plausible inference is that Defendants did not appropriately monitor the Mercer Fund at all during the Class Period.  The Mercer Fund was added to the Plan in December 2014, less than three years after the investment was launched in May 2012.  Mercer Investment Management, LLC, the "manager of managers" for the fund, is a subsidiary of Marsh & McLennan.[14]  This affiliation is likely the sole reason Defendants selected for the Plan a fund with no demonstrable track record despite the availability of several prudent alternative emerging market investment options with far more developed performance histories.  Due to the Investment Committee's

---

[14]*See* Marsh & McLennan Companies 401(k) Savings and Investment Plan 2019 Form 5500.  A "manager of managers" unilaterally hires and fires sub-advisors and determines the amount of assets allocated to sub-advisors.  In other words, Defendants' affiliate both derived significant revenues from the investment of Plan assets in the Mercer Fund *and* determined the structure of the investment option.  When offering affiliated investments in a plan, fiduciaries have a responsibility to ensure the arrangements are free of conflicts of interest and do not favor the interests of fiduciaries and their affiliates over plan participants and beneficiaries.  It is apparent that Defendants subordinated the interests of Plan participants and beneficiaries to the financial interests of their affiliates in failing to apply objective, rigorous monitoring criteria to the Mercer Fund and failing to implement *any* other measures to avoid the appearance or existence of a conflict of interest.

deficient investment selection and review procedures, a general lack of understanding of how to evaluate potential investments and their returns, and/or an attitude of neglect towards the Plan in favor of the nascent offering of a related enterprise, Defendants failed to appropriately scrutinize, and timely replace, this poorly performing fund.

52.     By selecting and retaining the Mercer Fund, Defendants placed Mercer's interests above the interests of the Plan and its participants and beneficiaries.  Instead of considering objective criteria in evaluating the Mercer Fund, the Investment Committee selected and then failed to timely remove the Mercer Fund because it was a familiar product which generated substantial revenues for a subsidiary of Marsh & McLennan.  By ignoring the persistent and glaring indicia of the Mercer Fund's unsuitability for the Plan because of the investment's affiliation, Defendants neglected to consider whether Plan participants would be better served by an alternative emerging markets investment managed by an unaffiliated company.

53.     At their meetings during the Class Period, the Investment Committee members had access to the below returns data in real time, which would have been sufficient to convince a fiduciary following a prudent process that the expected performance of the Mercer Fund could not justify its retention in the Plan, and the Mercer Fund should be removed long before it ultimately was:

- As of the most recent quarter-end at the start of the Class Period, the end of the Second Quarter of 2016, the Mercer Fund did not yet have a five-year track record, but its rolling three-year returns trailed those of its benchmark and ranked in the bottom half of its peer group for every period going back to the Second Quarter of 2015.  By the end of the Second Quarter of 2018, the Mercer Fund's three-year annualized returns trailed those of its benchmark by 0.94% and ranked in the 74th percentile among its peers.[15]

- As of the end of the Third Quarter of 2016, the Mercer Fund's three-year annualized returns trailed those of its benchmark by 0.79% and ranked in the 64th percentile.

---

[15]Morningstar category peer rankings range from 1 (best) to 100 (worst).

- As of the end of the Fourth Quarter of 2016, the Mercer Fund's three-year annualized returns trailed those of its benchmark by 0.63% and ranked in the 55th percentile.

- As of the end of the First Quarter of 2017, the Mercer Fund's three-year annualized returns trailed those of its benchmark by 0.55% and ranked in the 56th percentile.

54.      At this point, consistent with their monitoring duties, the Investment Committee knew or should have known that, for least *four consecutive quarters*, the Mercer Fund demonstrated an abject inability to generate returns to beat the benchmark or the peer group median and expected future performance could not support retention of the fund in the Plan.[16] Defendants ignored this troubling pattern (which had existed since the Mercer Fund's inception), however, and allowed the Mercer Fund to linger even as its performance issues persisted:

- As of the end of the Second Quarter of 2017, the Mercer Fund's three- and five-year annualized returns trailed those of its benchmark by 0.67% and 0.75%, respectively, and ranked in the 53rd and 61st percentile, respectively.

- As of the end of the Third Quarter of 2017, the Mercer Fund's three- and five-year annualized returns trailed those of its benchmark by 0.87% and 0.51%, respectively, and ranked in the 59th and 63rd percentile, respectively.

- As of the end of the Fourth Quarter of 2017, the Mercer Fund's three- and five-year annualized returns trailed those of its benchmark by 1.71% and 0.98%, respectively, and ranked in the 66th and 68th percentile, respectively.

- As of the end of the First Quarter of 2018, the Mercer Fund's three- and five-year annualized returns trailed those of its benchmark by 1.29% and 1.07%, respectively, and ranked in the 65th and 65th percentile, respectively.

55.      At this point, the Investment Committee knew or should have known that the Mercer Fund's returns data demonstrated its persistent inability to beat its benchmark or rank in the top half of its peers over periods most closely approximating a market cycle for *eight*

---

[16]Four quarters of trailing three- or five-year returns is distinct from four quarters of returns. Plaintiffs note, for example, four consecutive quarters of three-year underperformance to show that, were the Investment Committee meeting on a regular, quarterly basis, they would have reviewed three-year underperformance at four straight separate meetings. Any trailing three- or five-year underperformance as of a single-quarter end is worth a fiduciary's attention; trends such as those detailed in this Complaint are cause for considerable concern.

*consecutive quarters*.  Remarkably, Defendants retained the Mercer Fund for nearly two more years before finally removing it from the Plan lineup.  This belated removal does not absolve Defendants of their misconduct in selecting and retaining the Mercer Fund for as long as they did, nor does it undermine the inescapable inference that they failed to adequately monitor the Mercer Fund prior to its eventual removal.  As the troubled fund retained Plan assets until November 2019, Plan participants were subject to the below performance issues and suffered diminished returns affecting their ability to accumulate assets for retirement:

- As of the end of the Second Quarter of 2018, the Mercer Fund's three- and five-year annualized returns trailed those of its benchmark by 1.86% and 1.74%, respectively, and ranked in the 72nd and 72nd percentile, respectively.

- As of the end of the Third Quarter of 2018, the Mercer Fund's three- and five-year annualized returns trailed those of its benchmark by 2.71% and 1.45%, respectively, and ranked in the 63rd and 65th percentile, respectively.

- As of the end of the Fourth Quarter of 2018, the Mercer Fund's three- and five-year annualized returns trailed those of its benchmark by 2.67% and 1.41%, respectively, and ranked in the 60th and 61st percentile, respectively.

- As of the end of the First Quarter of 2019, the Mercer Fund's three- and five-year annualized returns trailed those of its benchmark by 2.46% and 1.47%, respectively, and ranked in the 67th and 66th percentile, respectively.

- As of the end of the Second Quarter of 2019, the Mercer Fund's three- and five-year annualized returns trailed those of its benchmark by 2.57% and 1.43%, respectively, and ranked in the 64th and 68th percentile, respectively.

- As of the end of the Third Quarter of 2019, the Mercer Fund's three- and five-year annualized returns trailed those of its benchmark by 1.85% and 1.31%, respectively, and ranked in the 67th and 66th percentile, respectively.

56.     Indeed, an objective, dispassionate examination of the Mercer Fund against any of the best available emerging market funds would have resulted in the replacement of the former with the latter.  Instead, Defendants' inaction, due to the Mercer Fund's affiliation with a subsidiary of the Plan's sponsor, saddled participants who desired to diversify their retirement

accounts with an investment in emerging markets with a manager that could not beat its benchmark or generate returns that ranked in the top half of its peers.

57.    The Mercer Fund's severe performance issues were apparent at the start of the Class Period.  When an investment option's track record is so apparently poor, prudent fiduciaries should necessarily replace the fund with an alternative that has demonstrated the ability to consistently outperform the benchmark and rank among the top half of its peers, or, at the very least, retain an alternative that tracks the benchmark.  There were several other prudent and readily-available actively managed alternatives that Defendants could have selected for the Plan in place of the Mercer Fund including, for example, the American Funds New World Fund ("New World") or the William Blair Emerging Markets Growth Fund ("William Blair").  At the start of the Class Period, at which point the Mercer Fund's three-year annualized returns trailed the benchmark and ranked in the 74th percentile among emerging markets funds, the New World Fund's three- and five-year returns beat the *same* manager-selected benchmark and ranked in the 10th and 6th percentile, respectively, among that same peer group, and the William Blair Fund's three- and five-year returns also exceeded the benchmark and ranked in the 23rd and 19th percentile, respectively.  Both the New World Fund and William Blair Fund remained considerably better active emerging market funds than the Mercer Fund throughout the relevant period.  Defendants' failure to timely replace the Mercer Fund deprived participants of the opportunity to invest in more appropriate, better performing alternatives and was a breach of fiduciary duty.

## V.    ERISA'S FIDUCIARY STANDARDS

58.    ERISA imposes strict fiduciary duties of loyalty and prudence upon the

Defendants as fiduciaries of the Plan.  Section 404(a) of ERISA, 29 U.S.C. § 1104(a), states, in

relevant part, as follows:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the
> interest of the participants and beneficiaries and -
>
> (A)    for the exclusive purpose of
>
>> (i)    providing benefits to participants and their
>> beneficiaries; and
>>
>> (ii)    defraying    reasonable    expenses    of
>> administering the plan;
>
> [and]
>
> (B)    with the care, skill, prudence, and diligence under the
> circumstances then prevailing that a prudent man acting in a
> like capacity and familiar with such matters would use in the
> conduct of an enterprise of like character and with like aims.

59.    Under 29 U.S.C. § 1103(c)(l), with certain exceptions not relevant here, the assets

of a plan shall never inure to the benefit of any employer and shall be held for the exclusive

purposes of providing benefits to participants in a plan and their beneficiaries and defraying

reasonable expenses of administering the plan.

60.    Under ERISA, parties that exercise any authority or control over plan assets,

including the selection of plan investments and service providers, are fiduciaries and must act

prudently and solely in the interest of participants in a plan.

61.    ERISA's fiduciary duties are "the highest known to the law" and must be

performed "with an eye single" to the interests of participants.  *Donovan v. Bierwirth*, 680 F.2d

263, 271, 272 n. 8 (2d Cir. 1982).

62.     ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries.  Section

405(a) of ERISA, 29 U.S.C. § 1105(a) provides a cause of action against a fiduciary for

knowingly participating in a breach by another fiduciary and knowingly failing to cure any

breach of duty.  ERISA states, in relevant part, as follows:

> In addition to any liability which he may have under any other provision
> of this part, a fiduciary with respect to a plan shall be liable for a breach of
> fiduciary responsibility of another fiduciary with respect to the same plan
> in the following circumstances:
>
> > (1)     if he participates knowingly in, or knowingly undertakes to
> > conceal, an act or omission of such other fiduciary,
> > knowing such act or omission is a breach; or
> >
> > (2)     if, by his failure to comply with section 404(a)(l) in the
> > administration of his specific responsibilities which give
> > risk to his status as a fiduciary, he has enabled such other
> > fiduciary to commit a breach; or
> >
> > (3)     if he has knowledge of a breach by such other fiduciary,
> > unless he makes reasonable efforts under the circumstances
> > to remedy the breach.

63.     Section 502(a)(2) of ERISA, 29 U.S.C. § 1132(a)(2) authorizes a plan participant

to bring a civil action to enforce a breaching fiduciary's liability to the plan under Section 409,

29 U.S.C. § 1109.  Section 409(a) of ERISA provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches
> any of the responsibilities, obligations, or duties imposed upon
> fiduciaries by this subchapter shall be personally liable to make
> good to such plan any losses to the plan resulting from each such
> breach, and to restore to such plan any profits of such fiduciary
> which have been made through use of assets of the plan by the
> fiduciary, and shall be subject to such other equitable or remedial
> relief as the court may deem appropriate, including removal of such
> fiduciary.

-43-

## VI.    CLASS ALLEGATIONS

64.    This action is brought as a class action by Plaintiffs on behalf of themselves and

the following proposed Class:

> All participants and beneficiaries in the Marsh & McLennan Companies
> 401(k) Savings and Investment Plan at any time on or after August 4, 2016
> and continuing to the date of judgment, or such earlier date that the Court
> determines is appropriate and just, including any beneficiary of a deceased
> person who was a participant in the Plan at any time during the Class Period.

Excluded from the Class are Defendants and the Judge to whom this case is assigned or any

other judicial officer having responsibility for this case who is a beneficiary.

65.    This action may be maintained as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure.

66.    **Numerosity**.  Plaintiffs are informed and believe that there are at least thousands

of Class members throughout the United States.  As a result, the members of the Class are so

numerous that their individual joinder in this action is impracticable.

67.    **Commonality**.  There are numerous questions of fact and/or law that are common

to Plaintiffs and all the members of the Class, including, but not limited to the following:

(a)    Whether Defendants failed and continue to fail to discharge their duties with

respect to the Plan solely in the interest of the Plan's participants for the exclusive purpose of

providing benefits to participants and their beneficiaries;

(b)    Whether Defendants breached their fiduciary duties under ERISA by failing to

defray the reasonable expenses of administering the Plan; and

(c)    Whether and what form of relief should be afforded to Plaintiffs and the Class.

68.    **Typicality**.  Plaintiffs, who are members of the Class, have claims that are typical

of all the members of the Class.  Plaintiffs' claims and all the Class members' claims arise out

of the same uniform course of conduct by Defendants and arise under the same legal theories

that are applicable as to all other members of the Class.  In addition, Plaintiffs seek relief for the

Plan under the same remedial theories that are applicable as to all other members of the Class.

69.     **Adequacy of Representation**.  Plaintiffs will fairly and adequately represent the

interests of the members of the Class.  Plaintiffs have no conflicts of interest with other

members of the Class or interests that are any different from the other members of the Class.

Plaintiffs have retained competent counsel experienced in class action and other complex

litigation, including class actions under ERISA.

70.     **Potential Risks and Effects of Separate Actions**.  The prosecution of separate

actions by or against individual Class members would create a risk of: (A) inconsistent or

varying adjudications with respect to individual Class members that would establish

incompatible standards of conduct for the party opposing the Class; or (B) adjudications with

respect to individual class members that, as a practical matter, would be dispositive of the

interests of the other members not parties to the individual adjudications or would substantially

impair or impede their ability to protect their interests.

71.     **Predominance**.  Common questions of law and fact predominate over questions

affecting only individual Class members, and the Court, as well as the parties, will spend the

vast majority of their time working to resolve these common issues.  Indeed, virtually the only

individual issues of significance will be the exact amount of damages recovered by each Class

member, the calculation of which will ultimately be a ministerial function and which does not

bar Class certification.

72.     **Superiority**.  A class action is superior to all other feasible alternatives for the

resolution of this matter.  The vast majority of, if not all, Class members are unaware of

Defendants' breaches of fiduciary duty and prohibited transactions such that they will never bring suit individually. Furthermore, even if they were aware of the claims they have against Defendants, the claims of virtually all Class members would be too small to economically justify individual litigation. Finally, individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the courts and of the parties, and potentially could lead to inconsistent results that would be contrary to the interests of justice.

73.    **Manageability**. This case is well-suited for treatment as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced, and proof of liability and damages can be presented on a Class-wide basis, while the allocation and distribution of damages to Class members would be essentially a ministerial function.

74.    Defendants have acted on grounds generally applicable to the Class by uniformly subjecting them to the breaches of fiduciary duty described above. Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief, are appropriate with respect to the Class as a whole.

75.    Plaintiffs' counsel will fairly and adequately represent the interests of the Class and are best able to represent the interests of the Class under Rule 23(g) of the Federal Rules of Civil Procedure. Moreover, treating this case as a class action is superior to proceeding on an individual basis and there will be no difficulty in managing this case as a class action.

76.    Therefore, this action should be certified as a class action under Rules 23(a) and 23(b)(1) and/or 23(b)(3) of the Federal Rules of Civil Procedure.

## COUNT I
### (For Breach of Fiduciary Duty)

77.     Plaintiffs incorporate by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

78.     Defendants' conduct, as set forth above, violates their fiduciary duties under Sections 404(a)(1)(A), (B) and (D) of ERISA, 29 U.S.C. § 1104(a)(1)(A), (B) and (D), in that Defendants failed and continue to fail to discharge their duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and (a) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the Plan with (b) the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (c) by failing to act in accordance with the documents and instruments governing the Plan.  In addition, as set forth above, Defendants violated their respective fiduciary duties under ERISA to monitor other fiduciaries of the Plan in the performance of their duties.

79.     To the extent that any of the Defendants did not directly commit any of the foregoing breaches of fiduciary duty, at the very minimum, each such Defendant is liable under 29 U.S.C. § 1105(a) because he, she, they, or it was a co-fiduciary and knowingly participated in, or concealed, a breach by another fiduciary, enabled another fiduciary to commit breaches of fiduciary duty in the administration of his, her, their, or its specific responsibilities giving rise to his, her, their, or its fiduciary status, or knowingly failed to cure a breach of fiduciary duty by another fiduciary and failed to take reasonable efforts to remedy the breach.

80.     As a direct result of Defendants' breaches of duties, the Plan has suffered losses and damages.

81.     Pursuant to Sections 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109 and 1132, Defendants are liable to restore to the Plan the losses that have been suffered as a direct result of Defendants' breaches of fiduciary duty and are liable for damages and any other available equitable or remedial relief, including prospective injunctive and declaratory relief, and attorneys' fees, costs, and other recoverable expenses of litigation.

## COUNT II
### (Failure to Monitor Fiduciaries and Co-Fiduciary Breaches)

82.     Plaintiffs incorporate by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

83.     Marsh & McLennan is responsible for appointing, overseeing, and removing members of the Committees, who, in turn, are responsible for appointing, overseeing, and removing members of the Committees.

84.     In light of its appointment and supervisory authority, Marsh & McLennan had a fiduciary responsibility to monitor the performance of the Committees and their members.  In addition, Marsh & McLennan and the Committees had a fiduciary responsibility to monitor the performance of the members of the Committees.

85.     A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan assets, and must take prompt and effective action to protect the Plan and participants when they are not.

86.     To the extent that fiduciary monitoring responsibilities of Marsh & McLennan or the Committees were delegated, each Defendant's monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

87.     Marsh & McLennan and the Committees breached their fiduciary monitoring

duties by, among other things:

(a)   Failing to monitor and evaluate the performance of their appointees or have a system in place for doing so, standing idly by as the Plan suffered enormous losses as a result of the appointees' imprudent actions and  omissions with respect to the Plan;

(b)   Failing to monitor their appointees' fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein, in clear violation of ERISA; and

(c)   Failing to remove appointees whose performances were inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing investments within the Plan, all to the detriment of the Plan and its participants' retirement savings.

88.      As a consequence of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses.  Had Marsh & McLennan and the Committees discharged their fiduciary monitoring duties prudently as described above, the losses suffered by the Plan would have been minimized or avoided.  Therefore, as a direct result of the breaches of fiduciary duties alleged herein, the Plan and its participants have lost millions of dollars of retirement savings.

89.      Marsh & McLennan and the Committees are liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count, to restore to the Plan any profits made through use of Plan assets, and are subject to other equitable or remedial relief as appropriate.

90.      Each of the Defendants also knowingly participated in the breaches of the other Defendants, knowing that such acts constituted breaches; enabled the other Defendants to commit breaches by failing to lawfully discharge their own fiduciary duties; and knew of the

breaches by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breaches. Defendants, thus, are liable for the losses caused by the breaches of their co-fiduciaries under 29 U.S.C. § 1105(a).

## COUNT III
### (In the Alternative, Liability for Knowing Breach of Trust)

91.     Plaintiffs incorporate by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

92.     In the alternative, to the extent that any of the Defendants are not deemed a fiduciary or co-fiduciary under ERISA, each such Defendant should be enjoined or otherwise subject to equitable relief as a non-fiduciary from further participating in a knowing breach of trust.

93.     To the extent any of the Defendants are not deemed to be fiduciaries and/or are not deemed to be acting as fiduciaries for any and all applicable purposes, any such Defendants are liable for the conduct at issue here, since all Defendants possessed the requisite knowledge and information to avoid the fiduciary breaches at issue here and knowingly participated in breaches of fiduciary duty by permitting the Plan to offer a menu of imprudent investment options, all of which was unjustifiable in light of the size and characteristics of the Plan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the Class and the Plan, demand judgment against Defendants for the following relief:

(a)     Declaratory and injunctive relief pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, as detailed above;

(b)     Equitable, legal or remedial relief to return all losses to the Plan and/or for restitution and/or damages as set forth above, plus all other equitable or remedial relief as

the Court may deem appropriate pursuant to Sections 409 and 502 of ERISA, 29 U.S.C.

§§ 1109 and 1132;

(c)      Pre-judgment and post-judgment interest at the maximum permissible rates,

whether at law or in equity;

(d)      Attorneys' fees, costs and other recoverable expenses of litigation; and

(e)      Such further and additional relief to which the Plan may be justly entitled and the

Court deems appropriate and just under all of the circumstances.

### <u>NOTICE PURSUANT TO ERISA § 502(h)</u>

To ensure compliance with the requirements of Section 502(h) of ERISA, 29 U.S.C. §

1132(h), the undersigned hereby affirms that, on this date, a true and correct copy of this

Complaint was served upon the Secretary of Labor and the Secretary of the Treasury by certified

mail, return receipt requested.

DATED: August 4, 2022                    Respectfully submitted,

<u>/s/ Laurie Rubinow</u>
Laurie Rubinow
Miller Shah LLP
225 Broadway, Suite 1830
New York, NY 10007
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: lrubinow@millershah.com

James E. Miller
Miller Shah LLP
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com

James C. Shah
Alec J. Berin
Miller Shah LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
          ajberin@millershah.com

Kolin C. Tang
Miller Shah LLP
19712 MacArthur Blvd.
Irvine, CA 92612
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: kctang@millershah.com

*Attorneys for Plaintiffs, the Plan
and the Proposed Class*