UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                                              :

ALFRETTA ANTOINE *et al.*,             :

                       :

              Plaintiffs,     :

                       :            22 Civ. 6637 (JPC)

       -v-                 :

                       :           <u>OPINION AND ORDER</u>

MARSH & MCLENNAN COMPANIES, INC. *et al.*,  :

                       :

             Defendants.    :

                       :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      Plaintiffs Alfretta Antoine, Shannon Cave, Christina Forney, and Judy Gallegos, who are current and former participants in the Marsh & McLennan Companies Savings and Investment 401(k) Plan (the "Plan"), bring this putative class action individually and on behalf of the Plan pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"), against Defendants Marsh & McLennan Companies, Inc. ("Marsh & McLennan"), the Board of Trustees of Marsh & McLennan Companies, Inc. (the "Marsh & McLennan Board"), the Marsh & McLennan Companies Benefits Administration Committee (the "Administration Committee"), the Marsh & McLennan Companies Benefits Investment Committee (the "Investment Committee," collectively with the Administration Committee, the "Committees"), and John and Jane Does 1-30. Plaintiffs allege that Defendants breached their fiduciary duties to the Plan, its participants, and its beneficiaries in violation of ERISA by imprudently selecting and retaining the BlackRock LifePath Index Funds, a suite of ten funds, and by imprudently and disloyally selecting and retaining the Mercer Emerging Markets Fund, despite those funds' underperformance and citing the latter's alleged affiliation with Marsh & McLennan.

Plaintiffs allege that Defendants thus caused the Plan's participants to incur substantial losses in the form of otherwise higher investment returns.  Plaintiffs also allege that Marsh & McLennan and the Committees breached their fiduciary duties by failing to monitor the investments.  Finally, Plaintiffs allege, in the alternative, that Defendants knowingly participated in a breach of trust. Defendants have moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  For the reasons discussed below, Defendants' motion to dismiss is granted.

## I.    Background

### A.  Facts[1]

Plaintiffs are former and current participants in the Plan.  Compl. ¶¶ 9-12.  Marsh & McLennan is a Delaware corporation with headquarters in New York.  *Id.* ¶ 13.  John and Jane Does 1-10 are members of the Marsh & McLennan Board.  *Id.* ¶ 14.[2]  The Administrative Committee "is responsible for the general administration and operation of the Plan."  *Id.* ¶ 15.  The Investment Committee "is responsible for the selection and monitoring of the investments made available to participants in the Plan."  *Id.*  Each Committee is alleged to be "a fiduciary under ERISA pursuant to 29 U.S.C. §§ 1002 and 1102."  *Id.*

Members of the Committees are appointed by Marsh & McLennan or its delegate, and the Committees "administer the Plan on Marsh & McLennan's behalf."  *Id.*  The Marsh & McLennan Board members also exercised "discretionary authority to appoint and/or monitor the

---

[1] Except where expressly noted otherwise, the following facts, which are assumed true for purposes of this Opinion and Order, are taken from the Complaint, Dkt. 1 ("Compl."), and the documents incorporated therein by reference.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

[2] Defendants contend that Plaintiffs failed to bring this suit against the proper Defendants, noting in particular that Marsh & McLennan "has no 'Board of Trustees,'" and, while Defendants do not devote any argument on this topic in their briefing, they "reserve all arguments on this point."  Dkt. 31 at 1 n.2.  This dispute does not affect the Court's determination and is therefore not addressed further.

Committees." *Id.* ¶ 14.  As a result, the unnamed Board members are alleged to have been, and to be, "fiduciaries of the Plan under ERISA pursuant to 29 U.S.C. []§ 1002(21)(A)." *Id.*  John and Jane Does 11-30 are the members of the Committees, and are alleged to be "fiduciaries of the Plan by virtue of their membership on the Committees or otherwise are fiduciaries to the Plan."[3]  *Id.* ¶ 16.

### 1.  The Plan

"The Plan is a participant-directed 401(k) plan, meaning participants direct the investment of their contribution into various investment options offered by the Plan." *Id.* ¶ 21.  This type of retirement plan is known as a defined-contribution plan.  *Id.* ¶ 4.[4]  For such plans, "[e]ach participant's account is credited with their participant contributions, applicable employer matching contributions, any discretionary contributions, and earnings or losses thereon." *Id.* ¶ 21.  Plan administrative expenses are paid "from Plan assets, and the majority of administrative expenses are paid by participants as a reduction of investment income." *Id.*  Participants can choose to invest their contributions in a variety of options, which include "various mutual funds, collective trust funds and the Marsh & McLennan Companies Stock Fund." *Id.*

Defined-contribution plans differ from "traditional . . . retirement plans" that operate as defined benefit plans.  *Id.* ¶ 2.  An employer that offers a defined benefit plan "typically promises a calculable benefit and assumes the risk with respect to high fees or underperformance of pension

---

[3] Plaintiffs claim that they are "unable to determine the membership of the Committees" or "the identities of the other fiduciaries of the Plan because" that information is "not publicly available."  Compl. ¶ 16.

[4] Title 29, United States Code, Section 1002 defines a "defined contribution plan" or "individual account plan" as "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account."  29 U.S.C. § 1002(34).

plan assets used to fund defined benefits," whereas "the participants in defined contribution plans bear the risk of high fees and investment underperformance." *Id.*

### 2.  Alleged Breaches of Fiduciary Duties

"Since at least December 31, 2009," one of the investment options available to Plan participants has been the BlackRock LifePath Index Funds, which is a "suite of ten" different funds (the "BlackRock TDFs"). *Id.* ¶ 31.  The funds are all target-date funds ("TDFs"); each such fund is comprised of "a portfolio of underlying funds that gradually shifts to become more conservative as the assumed target retirement year approaches." *Id.* ¶ 26.  The individual funds that comprise the overall suite are referred to as different "vintages" based on the different target retirement year used for each fund. *E.g.*, *id.* ¶ 44 (discussing the 2025, 2040, and 2055 vintages).  The BlackRock LifePath Index was, as of the end of 2021, one of "the top six largest TDF series," with 8.8 percent market share and $287 billion under management.  *Id.* ¶ 39.  The BlackRock TDFs have been designated as the Plan's Qualified Default Investment Alternative ("QDIA") throughout the Class Period.  *Id.* ¶ 35.  "Under [Department of Labor] regulations, retirement plan fiduciaries can designate one of the investment offerings in a plan's lineup as a QDIA . . . . If participants do not indicate where their assets should be invested, all contributions are automatically invested in the QDIA." *Id.* ¶ 35.  This designation means that "[t]he BlackRock TDF with the target year closest to a participant's assumed retirement age (*i.e.*, age 65) has served as the QDIA in the Plan" since early August 2016.[5]  *Id.* ¶ 35; *accord id.* ¶ 2.  A substantial portion of the Plan's assets have been invested in the BlackRock TDFs: "by December 31, 2020, approximately 17% of the Plan's assets were invested in the BlackRock TDFs."  *Id.* ¶ 36.

---

[5] Plaintiffs define the Class Period as "beginning six years prior to the date of the Action is filed and continuing to the date this Action is filed, or such other date the Court determines is appropriate and just."  Compl. ¶ 1.  The Complaint was filed on August 4, 2022.

Plaintiffs allege that it was imprudent to retain the BlackRock TDFs as an option for Plan participants in the face of sustained underperformance by the BlackRock TDFs. *Id.* ¶ 37. This impact of the retention of the BlackRock TDFs is alleged to have been "[e]xacerbat[ed]" by the QDIA designation. *Id.* ¶ 35. The Complaint presents data to substantiate Plaintiffs' underperformance allegations. Specifically, it includes a comparison of the BlackRock TDFs to four of the five other funds that, along with the BlackRock TDFs, comprise the six largest TDF series in the market: the Vanguard Target Retirement series ("Vanguard"), the T. Rowe Price Retirement series ("T. Rowe Price"), the American Funds Target Date Retirement series ("American Funds"), and the Fidelity Freedom Index series ("Fidelity Freedom Index"). *Id.* ¶¶ 39 (market share of each series), 43-48 (performance comparisons).[6] Plaintiffs allege that the BlackRock TDFs' three- and five-year annualized returns, measured at the vintage level, ranked either last or next to last out of the five funds (Vanguard, T. Rowe Price, American Funds, Fidelity Freedom Index, and BlackRock) from the second quarter of 2016 through the end of 2020. *Id.* ¶ 43 (pages 17-24). The allegations in the Complaint also reflect, however, that in 2021 through the second quarter of 2022 (the most recent data provided in the Complaint), the relative performance of the BlackRock TDFs improved, with vintages ranking anywhere from first to last, and vintages with later target dates consistently ranking first or second in the first two quarters of 2022. *Id.* at 25-27.

As alleged, the BlackRock TDFs' underperformance was "also visible at the suite level throughout the pertinent period," as demonstrated by an analysis showing composite three- and five-year rolling returns with all vintages receiving equal weight. *Id.* ¶ 47. Likewise, suite level

---

[6] Plaintiffs claim that the other suite of TDFs among the largest six, the Fidelity Freedom Funds, is not an appropriate comparator because that series would have also been an "imprudent selection" for the Plan. Compl. at 14 n.7.

performance weighted based on the allocation of assets among the different vintages also showed underperformance by the BlackRock TDFs' at the suite level based on rolling three- and five-year returns. *Id.* ¶ 48.  The Complaint's allegations, however, also suggest that the BlackRock TDFs did outperform the comparator funds in some instances in more recent years, though this outperformance was less prevalent in the asset weighted analysis. *E.g.*, *id.* ¶¶ 47-48 (pages 30, 32, 36).  Plaintiffs allege that this data was either available to or easily accessible to Defendants. *Id.* ¶ 40.  Therefore, Plaintiffs allege:

> It is apparent, given the continued presence of the BlackRock TDFs in the Plan's investment menu, that Defendants failed to scrutinize the performance of the BlackRock TDFs against any of the more appropriate alternatives in the TDF marketplace in order to determine whether the expected performance of the BlackRock TDFs could support their retention in the plan.  Accordingly, the Plan's investment in the BlackRock TDFs has resulted in participants missing out on millions of dollars in retirement savings growth . . . .

*Id.* ¶ 37.  Plaintiffs allege that Defendants therefore breached their fiduciary duty of prudence, and "appear to have chased the low fees charged by the BlackRock TDFs without any consideration of their ability to generate return." *Id.* ¶ 33.

The Mercer Emerging Markets Fund (the "Mercer Fund") "was added to the Plan in December 2014, less than three years after the investment was launched in May 2012." *Id.* ¶ 51. "Mercer Investment Management, LLC, the 'manager of managers' for the fund, is a subsidiary of Marsh & McLennan." *Id.*  A "manager of managers" is responsible for deciding which entities, known as "sub-advisors," manage the fund's assets, with the power to allocate portions of the fund's assets to different sub-advisors. *Id.* ¶ 51 n.14.  As a result, Mercer Investment Management "both derived significant revenues from the investment of Plan assets in the Mercer Fund *and* determined the structure of the investment option." *Id.*  Plaintiffs allege that Defendants acted "imprudently and disloyally" in selecting and retaining the Mercer Fund, speculating that the

affiliation between Marsh & McLennan and Mercer Investment Management "is likely the sole reason Defendants selected" the Mercer Fund as an option for Plan participants. *Id.* ¶ 51. The Mercer Fund was eventually removed from the Plan's lineup in November 2019. *Id.*

While part of the Plan, the Mercer Fund—an emerging markets fund—underperformed other emerging market funds. Its three-year annualized returns trailed "its benchmark," ranging from 0.55 percent below the benchmark to 2.71 percent below the benchmark, and ranking between the 53rd and 74th percentile among peer funds. *Id.* ¶¶ 53-55. The five-year annualized returns ranged from 0.51 percent to 1.74 percent below the benchmark, ranking between the 61st and 72nd percentile among peers. *Id.* ¶¶ 53-55. Plaintiffs allege that because the Mercer Fund was not removed until November 2019, even given this performance, "the only plausible inference is that Defendants did not appropriately monitor the Mercer Fund at all during the Class Period." *Id.* ¶ 51. They further allege:

> Due to the Investment Committee's deficient investment selection and review procedures, a general lack of understanding of how to evaluate potential investments and their returns, and/or an attitude of neglect towards the Plan in favor of the nascent offering of a related enterprise, Defendants failed to appropriately scrutinize, and timely replace, [the Mercer Fund].

*Id.*

As the Plan is a defined-contribution plan, Plaintiffs Antoine, Cave, Forney, and Gallegos, all former employees of Marsh & McLennan, *id.* ¶¶ 9-12, were able to choose to invest in any of the vintages in the BlackRock TDFs suite or in the Mercer Fund. Antoine alleges that she invested in "the BlackRock Lifepath Index Retirement Fund,"[7] Cave alleges that she invested in the "BlackRock LifePath Index 2025 Fund," Forney alleges that she invested in the "BlackRock LifePath Index 2050 Fund," and Gallegos alleges that she invested in the "BlackRock LifePath

---

[7] The Complaint does not allege which vintage within the suite Antoine invested in.

Index 2025 Fund." *Id.* ¶¶ 9-12.  Defendants, however, provided account statements showing that Plaintiffs invested in the following funds:

- Antoine invested in the BlackRock LifePath Index 2020 Fund O, Dkt. 32-11 at 9, the BlackRock LifePath Index Retirement Fund O, *id.* at 34, and the BlackRock LifePath Index Retirement Fund N, *id.* at 49;

- Cave invested in the BlackRock LifePath Index 2025 Fund O, Dkt. 32-12 at 3, and the BlackRock LifePath Index 2025 Fund N, *id.* at 33;

- Forney invested in the BlackRock LifePath Index 2050 Fund O, Dkt. 32-13 at 9; and

- Gallegos invested in the BlackRock LifePath Index 2025 Fund O, Dkt. 32-14 at 83, and the BlackRock LifePath Index 2025 Fund N, *id.* at 119.[8]

Thus, Plaintiffs did not invest in the Mercer Fund, and they invested in only some of the ten TDFs within the BlackRock suite.

**B. Procedural History**

Plaintiffs filed the Complaint on August 4, 2022, and bring three counts.  In Count I, Plaintiffs bring claims for breach of the duties of loyalty and prudence in violation of ERISA, 29 U.S.C. § 1104(a)(1)(A), (B), (D), against all Defendants, and allege that all Defendants knowingly participated in, concealed, enabled, or knowingly failed to cure a breach by another fiduciary, *id.* § 1105(a).  Compl. ¶¶ 77-81.[9]  In Count II, Plaintiffs bring claims under ERISA for failure to

---

[8] When a defendant's Rule 12(b)(1) motion places jurisdictional facts in dispute, a district court may "consider[] evidence outside the pleadings." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

[9] Plaintiffs also appear to advance a breach of fiduciary duty theory based on "failing to act in accordance with the documents and instruments governing the Plan." Compl. ¶ 78.  The Court cannot identify a sufficient factual basis for this claim in the Complaint, and therefore will decline to consider it.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the

monitor fiduciaries, 29 U.S.C. §§ 1109(a), 1105(a), against Marsh & McLennan and the Committees.  Compl. ¶¶ 82-90.  In Count III, Plaintiffs bring, in the alternative, claims for participating in a knowing breach of trust against all Defendants.  *Id.* ¶¶ 91-93.

On November 23, 2022, Defendants filed a motion to dismiss the Complaint, arguing that Plaintiffs fail to state a claim for breach of fiduciary duty, both as to the duty of prudence and the duty of loyalty, and that Plaintiffs therefore fail to state a claim for failure to monitor and for participation in a knowing breach of trust due to the lack of a predicate breach.  Dkts. 30, 31 ("Motion").  Defendants also argue that the Court should dismiss Plaintiffs' claims regarding the Mercer Fund for lack of standing.  Motion at 20-21.  Plaintiffs filed an opposition to Defendants' motion on December 22, 2022, Dkt. 45 ("Opposition"), and Defendants filed a reply on January 13, 2023, Dkt. 46 ("Reply").  Defendants filed notices of supplemental authority on January 20, 2023, Dkt. 47, and on February 9, 2023, Dkt. 49.  Plaintiffs responded to these notices on February 27, 2023.  Dkt. 51.  Defendants filed additional notices of supplemental authority on March 6, 2023, Dkt. 52, on April 26, 2023, Dkt. 53, and on June 15, 2023, Dkt. 54.  Plaintiffs then filed their own notice of supplemental authority on June 28, 2023.  Dkt. 55.  This was followed by yet more notices: from Defendants, on July 18, 2023, Dkt. 56, a response from Plaintiffs on July 21, 2023, Dkt. 57, and a final notice from Defendants on August 15, 2023, Dkt. 58.[10]

---

elements of a cause of action, supported by mere conclusory statements, do not suffice [at the pleadings stage].").

[10] The Court received a brief from *amici curiae* American Benefits Council, the ERISA Industry Committee, the American Retirement Association, and the Committee on Investment of Employee Benefit Assets, Inc., Dkt. 43, and has considered that submission in deciding Defendants' motion.

## II.      Legal Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Thus, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *LaFaro v. N.Y. Cardiothoracic Grp. PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).  The Supreme Court has recognized that a motion to dismiss for failure to state a claim serves an "important mechanism for weeding out meritless claims" in the ERISA context.  *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).  At the same time, however, "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences." *Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.* ("*Morgan Stanley*"), 712 F.3d 705, 718 (2d Cir. 2013) (internal quotation marks omitted).

When, as here, standing is challenged based on the pleadings, a court must accept a complaint's material allegations as true and construe the complaint in favor of the complaining party.  *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 357 (2d Cir. 2016). However, when assessing a factual challenge to standing, a court may consider evidence outside

the pleadings. *Amidax*, 671 F.3d at 145. The plaintiff bears the burden of alleging facts that establish standing. *Id.*

### III.   Discussion

ERISA is a "comprehensive and reticulated statute," *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251 (1993) (citation omitted), that was enacted for the "central purpose" of "protect[ing] beneficiaries of employee benefit plans," *Rinehart v. Lehman Bros. Holdings Inc.*, 817 F.3d 56, 63 (2d Cir. 2016) (internal quotation marks omitted). To carry out this purpose, ERISA imposes upon fiduciaries "a number of detailed duties and responsibilities, which include the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Mertens*, 508 U.S. at 251-52 (internal quotation marks omitted) (alteration in original).

### A.  Standing

The Court begins with Defendants' argument that Plaintiffs' lack standing to bring claims regarding the selection and retention of the Mercer Funds in the Plan. *Vitagliano v. Cnty. of Westchester*, 71 F.4th 130, 136 (2d Cir. 2023) ("We begin with standing because it is a jurisdictional requirement and must be assessed before reaching the merits." (internal quotation marks omitted)).

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). A plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 2205 (quoting *Spokeo, Inc. v. Robins*, 578 U.S.

11

330, 341 (2016)).  And "standing is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek."  *Id.* at 2208.

"There is no ERISA exception to Article III."  *Thole v. U.S. Bank N.A*, 140 S. Ct. 1615, 1622 (2020).  To sue under ERISA, a plaintiff must have both constitutional standing and a cause of action under ERISA.  *Id.* at 1620-21; *Am. Psychiatric Ass'n*, 821 F.3d at 358-59.  Under *Thole*, the former requires a plaintiff to allege a loss that affected his personal account or receipt of benefits due to him to ensure the plaintiff has a "concrete stake in th[e] dispute."  140 S. Ct. at 1622; *see also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256 (2008) (holding that although 29 U.S.C. § 1132(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account"); *Taveras v. UBS AG*, 612 F. App'x 27, 29 (2d Cir. 2015) (summary order).

Plaintiffs allege that the BlackRock suite of TDFs underperformed the market, meaning that their investments in those accounts were not worth as much as they would have been had the Plan offered different alternatives.  *E.g.*, Compl. ¶¶ 20 ("Plaintiffs and all Plan participants suffered financial harm as a result of the Plan's imprudent investment options and were deprived of the opportunity to invest in prudent options with reasonable fees."), 44 ("The BlackRock TDFs dramatically, repeatedly underperformed the average return of the Comparator TDFs for virtually the entire relevant period . . . ."), 46 ("If Defendants had taken their fiduciary duties seriously during the Class Period, they would have replaced the BlackRock TDFs with a suitable alternative TDF.  Their failure to do so caused Plan participants to miss out on substantial investment returns for their retirement savings.").  These allegations are clearly sufficient to plead standing for the funds that Plaintiffs in fact invested in.  *See, e.g.*, *Patterson v. Morgan Stanley*, No. 16 Civ. 6568

12

(RJS), 2019 WL 4934834, at *4 (S.D.N.Y. Oct. 7, 2019) (noting that the plaintiffs "plainly ha[d] standing to bring claims regarding" funds they invested in).

Plaintiffs do not allege, however, that they invested in all ten BlackRock TDFs within the suite.  Antoine alleges that she invested in "the BlackRock LifePath Index Retirement Fund" without specifying which vintage, Cave alleges that she invested in the "BlackRock LifePath Index 2025 Fund," Forney alleges that she invested in the "BlackRock LifePath Index 2050 Fund," and Gallegos alleges that she invested in the "BlackRock LifePath Index 2025 Fund."  Compl. ¶¶ 9-12.  Antoine's allegation thus is ambiguous; it is not clear which particular TDF within the suite she invested in.   Defendants, however, provided account statements showing that Plaintiffs invested in the following funds:

- Antoine invested in the BlackRock LifePath Index 2020 Fund O, Dkt. 32-11 at 9, the BlackRock LifePath Index Retirement Fund O, *id.* at 34, and the BlackRock LifePath Index Retirement Fund N, *id.* at 49;

- Cave invested in the BlackRock LifePath Index 2025 Fund O, Dkt. 32-12 at 3, and the BlackRock LifePath Index 2025 Fund N, *id.* at 33;

- Forney invested in the BlackRock LifePath Index 2050 Fund O, Dkt. 32-13 at 9; and

- Gallegos invested in the BlackRock LifePath Index 2025 Fund O, Dkt. 32-14 at 83, and the BlackRock LifePath Index 2025 Fund N, *id.* at 119.

From these statements, it appears that Plaintiffs did not invest in all ten BlackRock TDFs nor did they invest in the Mercer Fund. [11]

---

[11] Plaintiffs do not contest that they did not invest in the Mercer Fund.  *See* Opposition at 20.

Whether Plaintiffs have standing to assert claims based on BlackRock TDFs they did not invest in and the Mercer Fund is most appropriately assessed under the Second Circuit's class standing jurisprudence. *See Patterson*, 2019 WL 4934834, at *6 (using the class standing framework); *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 9936 (LGS), 2017 WL 3868803, at *10 (S.D.N.Y. Sept. 5, 2017) (same). In the Second Circuit, a class action named plaintiff that has established constitutional standing to bring claims based on his own injuries may also be able to bring additional, separate claims on behalf of unnamed class members if such claims are sufficiently related to the claims for which the named plaintiff has established standing. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (discussing this class standing doctrine); *see also Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of N.Y. Mellon* ("*Ret. Bd.*"), 775 F.3d 154, 159-63 (2d Cir. 2014) (applying and clarifying the scope of the doctrine). A two-part test determines whether class standing exists:

> [I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.

*NECA-IBEW Health & Welfare Fund*, 693 F.3d at 162 (alterations and internal quotation marks omitted). The first prong requires only "some injury" as a result of the defendant's conduct. *Patterson*, 2019 WL 4934834, at *6 (citing *NECA-IBEW Health & Welfare Fund*, 693 F.3d at 162). The second prong is satisfied where the conduct implicates "sufficiently similar" proof. *Ret. Bd.*, 775 F.3d at 161-63.

Some courts in this District have suggested that a plaintiff may maintain a class action suit with claims based on the inclusion of funds in which the plaintiff did not invest based on the

derivative nature of an ERISA suit such as this one.  *E.g.*, *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 156 (S.D.N.Y. 2017) ("Here, plaintiffs have sued in a representative capacity . . . .  The fact that only some of these alleged losses manifested themselves in the named plaintiffs' individual accounts does not deprive plaintiffs of their standing to seek redress on behalf of the Plan for the broader injuries the Plan incurred."); *Brown v. Daikin Am., Inc.*, No. 18 Civ. 11091 (PAC), 2021 WL 1758898, at *5 (S.D.N.Y. May 4, 2021).  Others have disagreed, noting that the derivative nature of a suit does not absolve a plaintiff of "Article III's individualized-injury requirement."  *Patterson*, 2019 WL 4934834, at *5 (citing *Forte v. U.S. Pension Comm.*, No. 15 Civ. 4936 (PKC), 2016 WL 5922653, at *7 (S.D.N.Y. Sept. 30, 2016)); *In re Omnicom ERISA Litig.*, No. 20 Civ. 4141 (CM), 2021 WL 3292487, at *10 (S.D.N.Y. Aug. 2, 2021) (reasoning that "[t]he fact that an action brought by the Plan's participants to recover for injuries to the Plan (not to themselves) is, of necessity, a derivative action, not a direct action, does not alter" the analysis that the plaintiffs, "whose accounts were not affected by losses resulting from the inclusion" of funds they did not invest in, lacked standing).

*Thole* counsels that the derivative nature of an ERISA suit such as this one does not, on its own, allow a named plaintiff, or plaintiffs, to bring a class action with claims based on the wrongful inclusion of funds that they did not invest in.  In *Thole*, the Supreme Court rejected the plaintiffs' argument that they had standing "as representatives of the plan itself," noting that "in order to claim the interests of others, the litigants themselves still must have suffered an injury in fact . . . ."  140 S. Ct. at 1615, 1620 (internal quotation marks omitted).  Furthermore, the Second Circuit has affirmed a district court's determination that standing was lacking in an ERISA case when the plaintiff's standing theory was premised on "harm to the plan, as opposed to harm to individuals."  *In re UBS ERISA Litig.*, No. 08 Civ. 6696 (RJS), 2014 WL 4812387, at *7 (S.D.N.Y. Sept. 29,

2014), *aff'd sub nom. Taveras*, 612 F. App'x 27 (2d Cir. 2015).  Thus, the Court assesses Plaintiffs' standing to assert claims for BlackRock TDF funds and the Mercer fund under Second Circuit class standing jurisprudence.

Plaintiffs have standing as to the entire BlackRock TDFs suite, as Defendants acknowledge.  Compl. ¶ 31; Reply at 7 ("Defendants do not argue that Plaintiffs lack standing to challenge the other 'vintages' of the BlackRock TDFs that no Plaintiff held").  The conduct implicated by the inclusion of one TDF almost certainly implicates the "same set of concerns," and would hinge on proof "sufficiently similar" to the conduct implicated by the inclusion of another TDF within the same suite.  *Ret. Bd.*, 775 F.3d at 161; *accord id.* at 161-63; *see also In re Omnicom ERISA Litig.*, 2021 WL 3292487, at *6 ("Although the named plaintiffs did not invest in all of the Active Suite's thirteen funds, they did invest in the product line, which gives them standing to sue on behalf of the Plan for injuries incurred as a result of investment in the product line.").

In contrast, the selection and retention of the Mercer Fund implicate different conduct and proof.  The BlackRock TDFs suite is alleged to have been designated the QDIA—that is, the default investment option for Plan participants—unlike the Mercer Fund.  Compl. ¶¶ 35, 36.  As Plaintiffs allege, this designation would "magnif[y]" the impact of any breach stemming from the inclusion of the BlackRock TDFs in the Plan.  *Id.* ¶ 36.  Thus, conduct and proof related to the decision to designate the BlackRock TDFs as the QDIA would be of unique importance and, at the same time, unlikely to implicate conduct and proof related to the Mercer Fund.  In addition, Plaintiffs allege that the Mercer Fund was retained because "it was a familiar product which generated substantial revenues for a subsidiary of Marsh & McLennan."  Compl. ¶ 52.  Indeed, Plaintiffs claim that "this affiliation is likely the sole reason Defendants selected" the Mercer Fund.

*Id.* ¶ 51.  There is no comparable allegation as to the BlackRock TDFs.  The importance of the Mercer Fund's affiliation with Marsh & McLennan therefore implicates different conduct and associated proof than the claims stemming from the BlackRock TDFs' retention.  This conclusion is further bolstered by the fact that Plaintiffs assert that Defendants breached their duty of loyalty only based on the selection and retention of the Mercer Fund, not the BlackRock TDFs.[12]  Given these material differences in the relevant proof and conduct, Plaintiffs lack class standing to assert claims based on the selection and retention of the Mercer Fund.

Accordingly, the Court lacks jurisdiction over Plaintiffs' claims to the extent they are premised on the selection and retention of the Mercer Funds.

## B. Breach of Fiduciary Duties

"To state a claim for breach of fiduciary duty [under ERISA], a complaint must allege that (1) the defendant was a fiduciary who (2) was acting in a fiduciary capacity, and (3) breached his fiduciary duty."  *Cunningham v. USI Ins. Servs., LLC*, No. 21 Civ. 1819 (NSR), 2022 WL 889164, at *2 (S.D.N.Y. Mar. 25, 2022).  Only the third element is at issue: whether the Complaint alleges that Defendants breached their fiduciary duty of prudence.

### 1. Duty of Prudence

An ERISA fiduciary owes a duty of prudence, which requires that the fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent [person] acting in a like capacity and familiar with such matters would use in the conduct of an

---

[12] Although the Complaint does not parse Plaintiffs' claims this specifically, *see* Compl. ¶¶ 77-81, Plaintiffs' opposition only asserts a duty of loyalty claim based on Defendants' "selection and retention" of the Mercer Fund.  Opposition at 21-24.  Nor are there any allegations in the Complaint that Defendants somehow breached their duty of *loyalty* to Plaintiffs by selecting and retaining the BlackRock TDFs.  The Court therefore construes Plaintiffs' to assert a breach of the duty of loyalty only based on the selection and retention of the Mercer Fund, and will therefore not reach that duty of loyalty claim on the merits given the standing analysis above.

enterprise of a like character and like aims."   29 U.S.C. § 1104(a)(1)(B).   "The prudence of a fiduciary is measured according to the objective prudent person standard developed in the common law of trusts." *Sacerdote v. New York Univ.*, 9 F.4th 95, 107 (2d Cir. 2021) (internal quotation marks omitted).   Under this standard, the prudence of a fiduciary's actions "is judged based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight." *Brown v. Daikin Am., Inc.*, No. 18 Civ. 11091 (PAC), 2021 WL 1758898, at *6 (S.D.N.Y. May 4, 2021) (internal quotation marks omitted).   In other words, "this standard focuses on a fiduciary's conduct in arriving at an investment decision, not on its results, and asks whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Morgan Stanley*, 712 F.3d at 716 (cleaned up); *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17 Civ. 6685 (ALC), 2019 WL 4466714, at *5 (S.D.N.Y. Sept. 18, 2019) ("[C]ourts analyze a fiduciary's *process* to determine prudence, not outcome."). Moreover, a plan fiduciary has "a continuing duty of some kind to monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015); *accord Hughes v. Nw. Univ.*, 595 U.S. 170, 175 (2022) (same); *see also Morgan Stanley*, 712 F.3d at 717 ("An ERISA fiduciary's investment decisions also must account for changed circumstances and '[a] trustee who simply ignores changed circumstances that have increased the risk of loss to the trust's beneficiaries is imprudent.'" (quoting *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 734 (7th Cir. 2006))).

In considering a motion to dismiss, the district court must ensure that the complaint "alleges *nonconclusory* factual content raising a *plausible* inference of misconduct and does not rely on the vantage point of hindsight," while also being "cognizant that ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery

commences." *Sacerdote*, 9 F.4th at 107 (internal quotation marks omitted). Therefore, "[a] claim for breach of the duty of prudence will survive a motion to dismiss if the court, based on circumstantial factual allegations, may reasonably infer from what is alleged that the process was flawed or that an adequate investigation would have revealed to a reasonable fiduciary that the [decision] at issue was improvident." *Id.* at 108 (internal quotation marks omitted); *see also Morgan Stanley*, 712 F.3d at 718 (recognizing that the allegations of a complaint need not "directly address" the process by which the plan was managed (internal quotation marks omitted)); *Ferguson*, 2019 WL 4466714, at *5 (observing that when a plaintiff relies on "inferences from circumstantial allegations, this standard generally requires the plaintiff to allege facts, accepted as true, showing that a prudent fiduciary in like circumstances would have acted differently"). The inquiry into a plan fiduciary's decision-making process is necessarily "context specific," *Fifth Third Bancorp*, 573 U.S. at 425, and "requires assessing the allegations of the complaint as a whole" to determine whether the "facts alleged are suggestive of, rather than merely consistent with, a finding of misconduct," *Morgan Stanley*, 712 F.3d at 719 (internal quotation marks omitted). "At times, the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 595 U.S. at 177.

As detailed above, Plaintiffs allege that Defendants acted imprudently by "employ[ing] a fundamentally irrational decision-making process" in which they "appear to have chased the low fees charged by the BlackRock TDFs without any consideration of their ability to generate return." Compl. ¶¶ 33-34. Plaintiffs further claim that "any objective evaluation of the BlackRock TDFs would have resulted in the selection of a more consistent, better performing, and more appropriate TDF suite." *Id.* ¶ 33. They in large part point to comparisons of the performance of the BlackRock

TDFs with those of the Vanguard, T. Rowe Price, American Funds, and Fidelity Freedom Index suites of TDFs (collectively, the "Comparators").  *Id.* ¶¶ 39-40.[13]  Plaintiffs allege that the BlackRock TDFs suite's performance during the class period of August 4, 2016 to present, *id.* ¶ 1, "paled in comparison" to the Comparators "at all stages along the glide path," and further characterize the BlackRock TDFs' underperformance as "dramatic[]" and "deplorable."  *Id.* ¶¶ 40, 44, 47.  Plaintiffs purport to show this underperformance using a variety of metrics that they allege would have been "easily accessible" to Defendants.  *Id.* ¶ 43.

In line with almost all other district courts to have considered similar claims about the BlackRock TDFs, the Court finds that Plaintiffs' allegations do not rise to the level of circumstantial evidence needed to support a duty of prudence-based theory at the pleadings stage.[14] The following observation is particularly persuasive:

> While a plaintiff may allege a breach of fiduciary duty based on a fund's underperformance relative to a benchmark index, the comparative underperformance must generally be consistent and substantial to support an inference of imprudence.  That is because a prudent fiduciary may—and often does—retain investments through a period of underperformance as part of a long-range investment strategy, and will not necessarily reflexively jettison investment

---

[13] The Court will not delve into Defendants' arguments about the appropriateness of Plaintiffs' proffered Comparators at this juncture, *see* Motion at 15-18, since "the overwhelming trend with district courts in this Circuit is to defer deciding the question of whether two funds are proper comparators until after discovery."  *Kohari v. MetLife Grp. Inc.*, No. 21 Civ. 6146 (JPC), 2022 WL 3029328, at *7 (S.D.N.Y. Aug. 1, 2022) (internal quotation marks omitted).

[14] *Compare Trauernicht v. Genworth Fin. Inc.*, No. 22 Civ. 532, 2023 WL 5961651, at *9-14 (E.D. Va. Sept. 13, 2023) (denying the defendant's motion to dismiss a duty of prudence-based theory) *with Bracalente v. Cisco Sys., Inc.*, No. 22 Civ. 4417, 2023 WL 5184138, at *3-6 (N.D. Cal. Aug. 11, 2023) (dismissing claim based on a prudence theory); *Luckett v. Wintrust Fin. Corp.*, No. 22 Civ. 3968, 2023 WL 4549620, at *3-4 (N.D. Ill. July 14, 2023) (same); *Anderson v. Advance Pubs., Inc.*, No. 22 Civ. 6826 (AT), 2023 WL 3976411, at *3-4 (S.D.N.Y. June 13, 2023) (same); *Beldock v. Microsoft Corp.*, No. C22-1062, 2023 WL 3058016, at *3 (W.D. Wash. Apr. 24, 2023) (same); *Hall v. Cap. One Fin. Corp.*, No. 22 Civ. 857, 2023 WL 2333304, at *4-7 (E.D. Va. Mar. 1, 2023) (same); *Tullgren v. Booz Allen Hamilton*, No. 22 Civ. 856, 2023 WL 2307615, at *4-8 (E.D. Va. Mar. 1, 2023) (same).  The court in *Kistler v. Stanley Black & Decker Inc.* allowed the plaintiffs to amend their complaint before deciding the defendants' motion to dismiss on the merits.  No. 22 Civ. 966, Dkt. 84 (transcript) at 29-30 (D. Conn. Aug. 3, 2023).

options in favor of the prior year's top performers because past performance is no guarantee of future success.

*Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 163 (E.D.N.Y. 2022) (internal quotation marks omitted).  The same principles apply to comparisons relative to other suites of TDFs. *Beldock*, 2023 WL 3058016, at *3 ("[C]ourts across the country have rejected claims for breach of the fiduciary duty of prudence under ERISA where the plaintiffs allege nothing more than underperformance relative to other investment vehicles."); *see also Morgan Stanley*, 712 F.3d at 718 (noting that, in the absence of other evidence, it may not be "sufficient to show that better investment opportunities were available at the time of the relevant decisions"); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) ("Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty.").

Plaintiffs' claims of underperformance miss the mark.  As noted above, the lowest underperformance Plaintiffs cite is around 2.5 percent.  District courts in the Second Circuit and elsewhere have rejected claims based on similar or even more drastic underperformance metrics. *See, e.g.*, *Gonzalez*, 632 F. Supp. 3d at 164 (rejecting a duty of prudence theory based in part on a 2.57 percent underperformance relative to a benchmark); *Cho v. Prudential Ins. Co. of Am.*, No. 19-19886, 2021 WL 4438186, at *9 (D.N.J. Sept. 27, 2021) (same for underperformance of 3.71 percent); *Patterson*, 2019 WL 4934834, at *11 (1.14 percent underperformance relative to a benchmark "is relatively small and certainly not enough to support a claim for breach of the duty of prudence"); *Bekker v. Neuberger Berman Grp. LLC*, No. 16 Civ. 6123 (LTS), 2018 WL 4636841, at *2, 7 (S.D.N.Y. Sept. 27, 2018) (same for underperformance of approximately 4.4 percent relative to a benchmark).  Further undercutting Plaintiffs' underperformance-based theory

is the fact that the TDFs did not consistently underperform relative to the Comparators throughout the Class Period.  Indeed, the TDFs appear to have been on somewhat of an upswing in rankings among the Comparators toward the end of the Class Period, often ranking anywhere from third to first out of the five in 2021 and 2022.  *See* Compl. ¶ 43.  As alluded to above, a prudent fiduciary necessarily must factor long-term outcomes into the investment calculus for retirement funds, since they are meant to be managed over decades.  *Cf. Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) ("Nothing in the record suggests that it was not reasonable and prudent to select conservative funds with long-term growth potential and to stay with those mutual funds even during years of lower performance."); *Patterson*, 2019 WL 4934834, at *11 ("[T]he duty of prudence does not compel ERISA fiduciaries to reflexively jettison investment options in favor of the prior year's top performers.  If that were the case, Plan sponsors would be duty-bound to merely follow the industry rankings for the past year's results, even though past performance is no guarantee of future success."); *White v. Chevron Corp.*, No. 16 Civ. 793, 2016 WL 4502808, at *17 (N.D. Cal. Aug. 29, 2016) ("[A] fiduciary may—and often does—retain investments through a period of underperformance as part of a long-range investment strategy.").  Plaintiffs maintain that "[l]ater positive performance does not absolve Defendants' failure to act on the sustained, drastic underperformance the BlackRock TDFs exhibited . . . for the majority of the Class Period," Opposition at 17, but this argument still ignores the fact that retaining funds underperforming in the short-term can still be prudent in light of a long-term investment strategy.  And looming over Plaintiffs' allegations is the fact that—by their own admission—the BlackRock TDFs offered "low fees."  Compl. ¶ 33.  "An ERISA fiduciary's duty of prudence encompasses a duty to prevent plan participants from incurring excessive and unreasonable fees."  *Vellali v. Yale Univ.*, No. 16 Civ. 1345, 2022 WL 13684612, at *6 (D. Conn. Oct. 21, 2022); *see also Tibble*, 575 U.S. at 525

("Expenses, such as management or administrative fees, can sometimes significantly reduce the value of an account in a defined-contribution plan."); *Bracalente*, 2023 WL 5184138, at *4 (concluding, in dismissing nearly identical claims about the BlackRock TDFs, that "the Complaint's own allegations cut against an inference of imprudence," as the complaint "not[ed] that the BlackRock TDFs charged 'low fees' and enjoyed significantly improved performance in early 2022").

To be sure, the Court does not hold today that underperformance alone can never suffice to plausibly allege a breach of the duty prudence. Rather, the underperformance alleged here, in the absence of additional indicia of imprudent decision-making, does not demonstrate dramatic enough underperformance to justify an inference of imprudence. Should Plaintiffs choose to amend their Complaint, *see infra* IV, Plaintiffs can rely on underperformance, provided the underperformance is of a degree by itself or in combination with other factors to plausibly allege a violation of the duty of prudence. But the allegations in the Complaint have failed to do so. The Court therefore grants Defendants' motion to dismiss Count I.[15]

## C.  Failure to Monitor

"The duty to monitor, although not explicitly imposed by statute, flows from the other duties set out in Section 1104(a) and require[s] those fiduciaries with the power to appoint and remove plan fiduciaries to monitor the performance of those appointees." *Patterson*, 2019 WL 4934834, at *7 (internal quotation marks omitted). In this regard, an underlying breach of the

---

[15] Plaintiffs also base Count I on a violation of 29 U.S.C. § 1105(a) by knowingly participating in, concealing, enabling, or knowingly failing to cure a breach by another fiduciary. In the absence of a breach in the first place, this claim necessarily fails, as well. *See Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1162 (N.D. Cal. 2022) (concluding that "co-fiduciary liability" claims would necessarily "fail because [p]laintiffs have failed to state an underlying ERISA violation").

duties imposed by ERISA is necessary to maintain a claim for breach of the duty to monitor.  *See Rinehart¸* 817 F.3d at 68 (affirming dismissal of monitoring claim when the plaintiffs failed to identify a breach of prudence by the plan committee); *Jander v. Int'l Bus. Mach. Corp.*, 205 F. Supp. 3d 538, 546-47 (S.D.N.Y. 2016) ("Because Plaintiffs have failed to allege an underlying breach, the duty to monitor claim is dismissed.").  Consequently, because the Court has concluded that Plaintiffs have failed to plead a breach of prudence-based claim, their failure to monitor claim necessarily fails as well.

The same logic applies to their knowing breach of trust theory, since it is predicated on "Defendants possess[ing] the requisite knowledge and information to avoid the fiduciary breaches at issue here and knowingly participat[ing] in breaches of fiduciary duty by permitting the Plan to offer a menu of imprudent investment options." Compl. ¶ 93.  As other district courts interpreting the near-identical claims discussed above have concluded, this claim cannot survive without a conclusion that there were breaches of Defendants' fiduciary duties in the first place.  *See Bracalente*, 2023 WL 5184138, at *6 ("Cisco could not have 'knowingly participated in breaches of fiduciary duty by permitting the Plan to offer a menu of imprudent investment options' where the BlackRock TDFs have not been alleged to be imprudent."); *Beldock*, 2023 WL 3058016, at *4 (dismissing the plaintiffs' derivative claims because the reasoning for such claims "assumes that [the plaintiffs] have sufficiently pleaded their claim for breach of the fiduciary duty of prudence").

## IV.    Leave to Amend

Lastly, the Court considers Plaintiffs' request to grant them leave to amend.  *See* Opposition at 4 n.5.  Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  The Court will grant Plaintiffs leave to file an amended complaint, in the event that they believe that they can plead facts that

would adequately state a claim upon which relief may be granted and which can cure the standing-related defects identified above.  Defendants would not be unduly prejudiced by an amendment and are on notice as to the basic circumstances underlying the claims.  The Court emphasizes, however, that Plaintiffs should amend only if they are able to resolve the pleading deficiencies outlined in this Opinion and Order.

### V.      Conclusion

For the foregoing reasons, Defendants' motion to dismiss is granted without prejudice.  If Plaintiffs choose to amend his Complaint, they must do so by November 1, 2023.  Failure to file an Amended Complaint by November 1, 2023, and without showing good cause to excuse such failure in advance of that deadline, will result in the dismissal of Plaintiffs' claims as they relate to the BlackRock LifePath Index Funds with prejudice.  The Clerk of Court is respectfully directed to close the motion pending at Docket Number 30.

SO ORDERED.

Dated: September 30, 2023
      New York, New York

                                       JOHN P. CRONAN
                               United States District Judge